E-FILED
Friday, 06 July, 2007  11:38:21 AM
Clerk, U.S. District Court, ILCD

Robbie J. Moore

　　　　　Petioner

1.

　　　　　　　　　　　　Case No. 07-C-2062

Terry McCann

　　　　　Respondent

## Motion of Supplemental

Here comes the Petioner Robbie J. Moore on the 2nd day of July in the year of 2007, requesting his Honorable Court to allow the following Exhibits to his Pro Ce Petion of Federal Habeas Curpus for he coloberate the Issues raised in his Petion.

FILED

JUL -6 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

Robbie J. Moore

Robbie J. Moore

B-16483

Stateville C.C.

P.O. Box 112

Joliet, IL. 61434

Pro Ce

LOGICALLY, IF THE COURT WAS PERMITTED TO CHECK THE STATUTES TO DETERMINE IF THERE EXISTED ANY TYPE
5-8-1 AND OR 9-1(A)
OF AN AGGERVATING FACTOR THEREBY PERMITTING SAID
THE
JUDGE TO REVIEW 5-8-2 EXTENDED TERM PROVISIONS, ONCE
A FINDING OF SUCH WAS FOUND, THEN LIKEWISE
SAID AGGERVATING FACTOR WHICH AMOUNTED TO AN
PRISM OF GUILT, BUT WAS NOT PLEAD AMOUNTS TO
ULTIMENT CONCLUDISION THAT FORM FACTOR/ELEMENT
HAD TO BE
HAD TO BE PLED WITHIN THE CHARGING INSTRUMENT & IF

ERROR    NOT, THEN ERROR OCCURRED WITHIN THE
SENTENCING STAGE, FOR THE RIGHT TO BE LAWFULLY
SENTENCED IS A SU

NO.  4-05-0325

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | the Fifth Judicial Circuit |
| | ) | Vermilion County, Illinois |
| vs. | ) | |
| | ) | No.  00-CF-246 |
| ROBBIE MOORE, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas J. Fahey |
| | ) | Judge Presiding. |

---

<u>BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE</u>

Frank Young
State's Attorney
Vermilion County Courthouse
7 North Vermilion
Danville, Illinois  61832

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Linda Susan McClain
Staff Attorney
State's Attorneys Appellate
    Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

RECEIVED
APR 24 2006
Office of the State Appellate Defender
FIFTH DISTRICT
MT. VERNON, ILLINOIS

<u>POINT AND AUTHORITIES</u>                                    <u>PAGE</u>

THE APPELLATE DEFENDER'S MOTION TO WITHDRAW AS

COUNSEL SHOULD BE GRANTED BECAUSE NO ARGUABLY

MERITORIOUS GROUNDS FOR APPEAL EXIST . . . . . . . . . .  2

<u>People</u> v. <u>Moore</u>, 295 Ill.App.3d 676, 694 N.E.2d 184

    (4th Dist. 1998) . . . . . . . . . . . . . . . . 2, 6

<u>People</u> v. <u>Tellez-Valencia</u>, 188 Ill.2d 523, 723

    N.E.2d 223 (1999) . . . . . . . . . . . . . . . 2, 6

<u>People</u> v. <u>Moore</u>, (No. 4-00-0890, December 12,

    2002, Rule 23 Order) . . . . . . . . . . . . 3, 6, 7

<u>Pennsylvania</u> v. <u>Finley</u>, 481 U.S. 551, 107 S.Ct.

    1990, 95 L.Ed.2d 539 (1987) . . . . . . . . . . . 3

<u>People</u> v. <u>Coleman</u>, 206 Ill.2d 261, 794 N.E.2d 275

    (2002) . . . . . . . . . . . . . . . . . . . . . 4

<u>People</u> v. <u>Bradley</u>, 7 Ill.2d 619, 131 N.E.2d 538

    (1956) . . . . . . . . . . . . . . . . . . . . . 4

<u>People</u> v. <u>Frank</u>, 48 Ill.2d 500, 272 N.E.2d 25

    (1971) . . . . . . . . . . . . . . . . . . . . . 5

<u>People</u> v. <u>Izquierdo</u>, 262 Ill.App.3d 558, 634 N.E.2d

    1266 (4th Dist. 1994) . . . . . . . . . . . . . . 5

<u>People</u> v. <u>Collins</u>, 153 Ill.2d 130, 606 N.E.2d

    1137 (1992) . . . . . . . . . . . . . . . . . . . 5

<u>Ross</u> v. <u>Moffitt</u>, 417 U.S. 600, 94 S.Ct. 2437,

    41 L.Ed.2d 341 (1974) . . . . . . . . . . . . . . 8

<u>ARGUMENT</u>

THE APPELLATE DEFENDER'S MOTION TO WITHDRAW AS COUNSEL SHOULD
BE GRANTED BECAUSE NO ARGUABLY MERITORIOUS GROUNDS FOR APPEAL
EXIST.

Following a bench trial in 1997, defendant was convicted
and sentenced to 20 years' imprisonment on each of the three
counts of predatory criminal sexual assault of a child (T.C.
and J.G.) and 7 years' imprisonment on the one count of
aggravated criminal sexual abuse (A.C.), the sentences to be
served consecutively. (<u>People</u> v. <u>Moore</u>, 295 Ill.App.3d 676,
694 N.E.2d 184, 185 (4th Dist. 1998).) Defendant <u>successfully</u>
<u>appealed and the supreme court reversed his convictions for</u>
<u>predatory criminal sexual assault</u> (T.C. and J.G.), the court
finding that the crime of predatory criminal sexual assault
did not exist at the time of the offense since that offense
was created as part of an unconstitutional public act. (<u>People</u>
v. <u>Tellez-Vallencia & Moore</u>, 188 Ill.2d 523, 723 N.E.2d 223,
225 (1999).)

Defendant was then retried and convicted of three counts
of aggravated criminal sexual assault (T.C. and J.G.) and
sentenced to three consecutive terms of 30 years'
imprisonment. (Supp. R. Vol. I, C117; Supp. R. Vol. III, 39)
On direct appeal, this court reduced each of defendant's three
sentences to twenty years, with the sentences to be served
consecutively, but otherwise affirmed the judgment of the

2

trial court. Defendant had also argued on direct appeal that the evidence was insufficient to establish his guilt as to the count involving J.G. <u>People</u> v. <u>Moore</u>, Rule 23 Order (No. 4-00-0890, December 12, 2002). Neither party appealed to the supreme court and this court issued its mandate on January 9, 2003. (R. Vol. I, C9)

On May 27, 2003, defendant filed a pro se petition for post-conviction relief. (R. Vol. I, C31-C36) The trial court appointed an attorney to represent defendant in the post-conviction proceedings. (R. Vol. I, C38-C39, C43) On September 21, 2004, defendant filed, through counsel, a "First Amended Petition for Post-Conviction Relief." (R. Vol. I, C46-C48) On April 14, 2005, the trial court held an evidentiary hearing on the amended petition for post-conviction relief. (R. Vol. IV) The court denied the amended petition for post-conviction relief. (R. Vol. IV, 52-53) The Office of the State Appellate Defender has moved to withdraw on appeal pursuant to <u>Pennsylvania</u> v. <u>Finley</u>, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and defendant has responded.

## Analysis

There are several grounds supporting the trial court's denial of defendant's post-conviction petition. At an evidentiary hearing, the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights and the circuit court's decision will not be disturbed unless

3

it is manifestly erroneous.  The term "manifest error" means error that is "clearly evident, plain, and indisputable." People v. Coleman, 206 Ill.2d 261, 794 N.E.2d 275, 286 (2002).

As for defendant's claim that he was improperly charged by mere information both in 1996 and again in 2000, there is no basis for relief nor any claim for error arising out of his trial in 1996 as the supreme court reversed his predatory criminal sexual assault convictions in that case and a post-conviction petition as to his aggravated criminal sexual abuse of A.C. conviction in 1997 is untimely.  Moreover, as for both trials, 725 ILCS 5/111-2(a) (West 1996 and 2000), provides that:

> All prosecutions of felonies shall be by information or indictment.  No prosecution may be pursued by information unless a preliminary hearing has been held or waived in accordance with Section 109-3 and at that hearing probable cause to believe the defendant committed an offense was found, and the provisions of Section 109-3.2 of this Code have been complied with.

That an indictment by grand jury is not necessary to give jurisdiction to a court in felony cases was made clear in People v. Bradley, 7 Ill.2d 619, 131 N.E.2d 538, 540 (1956). In this case, defendant was properly charged by information and bound over for trial following a probable cause hearing on June 9, 2000.  (Supp. R. Vol. C1)

*In 1996 only by way of Grad jury Indictment could one be Charged with a Class-X Felony*

As for defendant's claim that during the first trial in 1997 the trial court erroneously granted the State leave to amend the aggravated criminal sexual assault charges to three

*Violation of Due Process of Law!*

4

counts of predatory criminal sexual assault of a child, this claim was raised on direct appeal from the first trial and the supreme court reversed his convictions for predatory criminal sexual assault, the court finding that the crime of predatory criminal sexual assault did not exist at the time of the offense since that offense was created as part of an unconstitutional public act. People v. Tellez-Vallencia & Moore, 188 Ill.2d 523, 723 N.E.2d 223, 225 (1999).

As for defendant's claim that he was not proved guilty beyond a reasonable doubt in 1997 or 2000, the convictions for predatory criminal sexual assault in 1997 were reversed by the supreme court and therefore this issue is moot as to them and untimely as to the 1997 conviction for aggravated criminal sexual abuse. Moreover, it is well established that sufficiency of the evidence claims are not proper claims to be raised in post-conviction proceedings. People v. Frank, 48 Ill.2d 500, 272 N.E.2d 25, 27 (1971); People v. Izquierdo, 262 Ill.App.3d 558, 634 N.E.2d 1266, 1268 (4th Dist. 1994). Further, determinations of the reviewing court on the prior direct appeal are res judicata as to issues actually decided and issues that could have been presented on appeal and that were not are deemed waived. People v. Collins, 153 Ill.2d 130, 606 N.E.2d 1137, 1140 (1992). Defendant had argued on direct appeal from the 1997 trial that the evidence was insufficient to establish his guilt as to all counts and on direct appeal from the 2000 trial that the evidence was

insufficient to establish his guilt as to the count involving J.G.  People v. Moore, 295 Ill.App.3d 676, 694 N.E.2d 184, 187-188 (4th Dist. 1998); People v. Moore, Rule 23 Order (No. 4-00-0890, December 12, 2002).  This claim as to the counts alleging aggravated criminal sexual abuse of A.C. and aggravated criminal sexual assault of J.G. is clearly res judicata as it was raised previously on direct appeal.  This claim as to the counts alleging aggravated criminal sexual assault of T.C. is clearly waived as it could have been raised on direct appeal but was not.

As for defendant's claim of ineffective assistance of trial counsel during the 1997 trial, this issue has no basis for relief as to the reversed convictions and is untimely as to the remaining conviction.

As for defendant's claim that he was erroneously held after the reversal of his convictions, the State asserts that the supreme court reversed his predatory criminal sexual assault convictions of T.C. and J.G. but did not reverse his conviction for aggravated criminal sexual abuse of A.C. People v. Tellez-Valencia, 188 Ill.2d 523, 723 N.E.2d 223 (2000).  The only issue on appeal to the supreme court concerned the predatory criminal sexual assault convictions, and not the other conviction.  The aggravated criminal sexual abuse of A.C. conviction had been affirmed by this court. People v. Moore, 295 Ill.App.3d 676, 694 N.E.2d 184, 188 (4th Dist. 1998).

As for defendant's contention that the prosecutor attempted to manipulate the law at his 2000 sentencing, this is the issue he was successful on before this court in <u>People v. Moore</u>, Rule 23 Order (No. 4-00-0890, December 12, 2002). The State had argued on appeal that the 30-year sentence imposed after his second trial was not an increase in sentence as the more generous good-conduct credit available on resentencing made the 30-year sentence comparable to the 20-year sentence imposed under Truth-in-Sentencing. The appellate court disagreed and stated that it was merely speculation as to the extent the original court considered Truth-in-Sentencing in imposing the 20-year sentence. The appellate court found that as the court intended to impose the same sentence as before, the sentence should be 20 years.

<u>As for defendant's</u> contention that his attorney was ineffective in 2000 for arguing during closing that the defendant may have just "goosed" J.G. instead of sticking his finger in his anus as J.G. had testified that his pants and underpants were on (Supp. R. Vol. III, 30), this issue could have been raised on direct appeal but was not and defense counsel's attempt to paint defendant's touching as a misunderstood non-sexual "goosing" is an unchallengeable trial tactic.

As for defendant's contention in his response to appellate counsel's <u>Finley</u> motion to withdraw that he asked his public defender to appeal to the Illinois Supreme Court and the public

7

defender did not, this is the first time he has raised this issue. Therefore, it is waived. Morever, the right to appointed counsel extends to the first appeal of right and no further. Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974) (fundamental fairness exacted by due process clause does not require appointment of counsel in discretionary appeals to the State's highest court or in petitioning for review to the United States Supreme Court). Therefore, counsel's failure to timely file for discretionary review in a state's highest court does not deprive a defendant of effective assistance of counsel. Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982); People v. James, 111 Ill.2d 283, 489 N.E.2d 1350, 1354 (1986). Finally, defendant's mere assertions in his pro se response to appellate counsel's Finley motion are not adequate proof that he communicated his wishes to counsel. See People v. Franzen, 251 Ill.App.3d 813, 622 N.E.2d 877, 885 (2nd Dist. 1993).

Because no arguably meritorious grounds for appeal exist, the appellate defender should be allowed to withdraw as counsel and the order denying the petition should be affirmed.

8

CONCLUSION

WHEREFORE, the PEOPLE OF THE STATE OF ILLINOIS respectfully request that the motion to withdraw as counsel be allowed and that the judgment of the circuit court be affirmed.

Respectfully submitted,

THE PEOPLE OF THE STATE OF ILLINOIS

Frank Young
State's Attorney
Vermilion County Courthouse
7 North Vermilion
Danville, Illinois  61832

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
Linda Susan McClain
Staff Attorney
State's Attorneys Appellate
    Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

**E-FILED**
Friday, 06 July, 2007  11:39:10 AM
Clerk, U.S. District Court, ILCD

No. 4-05-0325

# IN THE APPELLATE COURT OF ILLINOIS
## FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** <br> Plaintiff-Appellee, | ) ) ) ) Appeal from the Circuit Court of the Fifth Judicial Circuit, Vermilion County, Illinois. |
| -vs- | ) ) No. 00-CF-246 |
| **ROBBIE MOORE,** <br> Defendant-Appellant. | ) ) Honorable ) Thomas J. Fahey, ) Judge Presiding. |

## MOTION TO WITHDRAW AS COUNSEL ON APPEAL

Now comes the Office of the State Appellate Defender (OSAD), the defendant's court-appointed attorney on appeal, by Assistant Defender John H. Gleason, and moves that This Court grant it leave to withdraw as counsel.

In support of its motion, OSAD states the following:

1. On May 24, 2000, the State filed an information charging Robbie J. Moore with three counts of aggravated criminal sexual assault. (Supp. Vol. I at R.C1-2) T.C. was the complainant in Counts I and II. J.G. was the complainant in Count III. The information alleged that both T.C. and J.G. were under the age of 13 years at the time of the alleged acts.

2. Trial by jury commenced on July 27, 2000. (Supp. Vol. II) On that date, the State called J.G. to testify. (Supp. Vol. II at R.75) J.G. testified. (Supp. Vol. II at R.76-89) The trial concluded on July 28, 2000 (Supp. Vol. III), with the return of guilty verdicts on all three counts. (Supp. Vol. III at R.39)

3. On September 6, 2000, the circuit court sentenced Moore to thirty years' imprisonment on each of the three counts, with the sentences to run consecutively. (R.C117) Moore appealed. (R.C121)

4. On direct appeal in App. Ct. No. 4-00-0890, Moore argued that (1) the State had failed to give him adequate notice of its intent to introduce evidence of out-of-court statements allegedly made by Moore's alleged child victims; (2) the evidence was insufficient to establish Moore's guilt as to the count involving J.G.; (3) his sentences were impermissibly lengthy; and (4) he was entitled to additional sentencing credit. This Court reduced each of Moore's three sentences to twenty years, with the sentences to be served consecutively, but otherwise affirmed the judgment of the circuit court. This Court remanded the cause for issuance of an amended judgment of sentence. *People v. Moore*, No. 4-00-0890 (December 12, 2002). On remand, the circuit court complied with the instruction of This Court, entering a written judgment sentencing Moore to twenty years' imprisonment for each of the three counts of aggravated criminal sexual assault, with the sentences to be served consecutively. (R.C26)

5. On May 27, 2003, Moore filed a *pro se* Petition for Post-Conviction Relief. (R.C31-36) The petition raised various points, including a claim that the trial judge had positioned J.G. and the lawyers in ways that obstructed Moore's view of J.G., thus depriving Moore of his right to confront one of his accusers. (R.C34) The circuit court appointed an attorney to represent Moore in post-conviction proceedings. (R.C38-39,43)

6. On September 21, 2004, Moore filed, through counsel, a "First Amended Petition for Post-Conviction Relief." (R.C46-48) The amended petition alleged that Moore had been deprived of his Sixth Amendment right to be confronted with the witnesses

against him at his trial. Specifically, the amended petition alleged that "the State's Attorney was positioned by the trial court in such a fashion as to obstruct the Petitioner's view of the witness, J.G.", and "[t]hat during cross[-]examination of the witness, J.G., the Public Defender was instructed by the trial court to stand in front of the witness, again obstructing the Petitioner's view of the witness." (R.C47) In a related claim, the amended petition alleged that Moore's public defender had provided constitutionally ineffective assistance, having "failed to timely object to the obstruction of Petitioner's view of the witness". (R.C47) Attached to the amended petition was an affidavit prepared by counsel and signed by Moore. (R.C49) In the affidavit, Moore swore that "the trial court positioned the alleged victim J.G. not on the witness stand but rather on some stairs situated behind the trial judge's bench during the questioning", and that his view of witness J.G. was thereby "obstructed." (R.C49)

7. On October 22, 2004, attorney Lawlyes filed a petition for attorney's fees. (R.C52) Attached to the petition is an invoice describing various tasks performed by Lawlyes. (R.C53) The invoice includes items such as these: "Review Mr. Moore's draft of Post Conviction Relief"; "Review Letter of Mr. Moore" (four such entries); "Visit with Robbie Moore" (two such entries); "Researched list of case and materials provided by Robbie Moore"; "Read complete trial transcript of 2000-CF-246"; and "Prepare Affidavit of Robbie Moore; Prepare First Amended Post Conviction Relief and Notice of Hearing." (R.C53)

8. On April 14, 2005, the circuit court held an evidentiary hearing on the amended petition for post-conviction relief. (Vol. IV) Robbie Moore testified that when J.G. was called to testify at Moore's trial, J.G. initially sat in a chair near the stenographer. (Vol. IV at) As J.G. sat in the chair, the trial judge questioned him. Neither the

prosecutor nor defense counsel questioned J.G. as he sat in the chair. (Vol. IV at 15-16) At some point during his testimony, J.G. moved from the chair to "[t]he step that leads up into the judge's bench." (Vol. IV at 5-6) With J.G. on the step, Moore could not see him, at all. (Vol. IV at 6) In addition, the trial judge "asked, uh, Mr. Mills [the prosecutor] and William Sohn [the defense attorney] to stand by the court stenographer to obstruct the view even further." (Vol. IV at 13) Moore recalled that the courtroom in which his trial was conducted was "[a]bout the same size" as the courtroom in which the evidentiary hearing was being held. (Vol. IV at 8)

9. The State called Larry Mills to testify at the evidentiary hearing. (Vol. IV at 17) Mills testified that he prosecuted Moore at trial. (Vol. IV at 17) Sometime before the trial, Mills told J.G. that when he testified, "he did not have to look towards the defendant's side of the courtroom." (Vol. IV at 22-23) When called to testify, J.G. sat in the witness chair. (Vol. IV at 22-23) Mills and the trial judge did not discuss any plan to obstruct Moore's view of J.G. (Vol. IV at 24-25) Nobody made any effort to obstruct Moore's view of J.G. (Vol. IV at 25) At trial, the defense did not object to the procedures surrounding J.G.'s testimony. (Vol. IV at 26) Mills did not remember anything obstructing Moore's view of J.G. (Vol. IV at 27) Mills did not recall J.G.'s moving from the witness chair during his testimony. (Vol. IV at 28)

10. After Moore and Mills testified, the post-conviction judge led the lawyers and Moore to the courtroom in which Moore's trial had been held. (Vol. IV at 33-34) The judge found that "contrary to what the defendant indicated, this courtroom is less than a quarter of the size of the courtroom where I presently sit." (Vol. IV at 34)

11. The post-conviction court indicated that it considered Moore's post-conviction testimony inconsistent with portions of the trial transcript. (Vol. IV at 50-51) Nevertheless, the court opined that the post-conviction dispute "comes down to

basically you have the assertion of Mr. Moore versus what the recollection - - his recollection versus Mr. Mills the Assistant State's Attorney's recollection." (Vol. IV at 51) The court denied the amended petition for post-conviction relief. (Vol. IV at 52-53)

12. Immediately after the evidentiary hearing, the circuit clerk filed a notice of appeal on Moore's behalf. (R.C58) The circuit court appointed the Office of the State Appellate Defender to represent Moore in his appeal from the order denying his amended petition. (Vol. IV at 53)

13. At an evidentiary hearing, the court is the finder of fact; it has the responsibility of making determinations as to the credibility of witnesses. *See* 725 ILCS 5/122-6 (West 2004); *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073 (1998).

14. "At an evidentiary hearing, the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights and the circuit court's decision will not be disturbed unless it is manifestly erroneous. The term 'manifest error' means error that is 'clearly evident, plain, and indisputable.'" *People v. Coleman*, 206 Ill. 2d 261, 277, 794 N.E.2d 275, 286 (2002) (citations omitted).

15. In this case, the post-conviction judge was free to believe Mills, and free to find Moore's testimony unreliable. The judge's ruling cannot reasonably be categorized as manifest error.

16. On October 25, 2005, undersigned counsel mailed Moore a letter explaining counsel's conclusion that the instant appeal lacks merit, and informing Moore of counsel's intention to ask This Court to allow the Office of the State Appellate Defender to withdraw as his attorney in the instant appeal.

17. This date, counsel is mailing to Moore a copy of the instant motion, along with

a letter informing him that he may respond to the instant motion by mailing such response to This Court at the address counsel provides in the letter, and further informing him that if he needs a copy of the common law record in order to prepare that response, he may request the record from This Court.

18. In *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990 (1987), the United States Supreme Court held that in collateral post-conviction proceedings, the United States Constitution does not require the full protection of the procedures set out in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967). Illinois courts have adopted this position. *See, e.g., People v. Lee*, 251 Ill. App. 3d 63, 621 N.E.2d 287 (2d Dist. 1993). Counsel is filing the instant motion in lieu of a motion under *Anders*.

WHEREFORE, the Office of the State Appellate Defender prays that This Court:

(A) Grant Moore a reasonable opportunity to show cause why the judgment of the circuit court should not be affirmed, and why the Office of the State Appellate Defender should not be allowed to withdraw as counsel on appeal; and

(B) Grant the Appellate Defender leave to withdraw as counsel for Moore in the instant appeal.

Respectfully submitted,

**DANIEL M. KIRWAN**
Deputy Defender

**JOHN H. GLEASON**
Assistant Defender
Office of the State Appellate Defender
Fifth Judicial District
117 North Tenth Street, Suite #300
Mt. Vernon, IL 62864
618-244-3466

COUNSEL FOR DEFENDANT-APPELLANT

# No. 4-05-0325

# IN THE APPELLATE COURT OF ILLINOIS
# FOURTH JUDICIAL DISTRICT

--------------------------------------------------------------

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
|      Plaintiff-Appellee, | ) | of the Fifth Judicial Circuit, |
| | ) | Vermilion County, Illinois. |
| -vs- | ) | |
| | ) | No. 00-CF-246 |
| | ) | |
| **ROBBIE MOORE,** | ) | Honorable |
|      Defendant-Appellant. | ) | Thomas J. Fahey, |
| | ) | Judge Presiding. |

--------------------------------------------------------------

## PROOF OF SERVICE

Mr. Robert Biderman
Office of the State's Attorneys
Appellate Prosecutor
725 South Second Street
Springfield, Illinois 62704

Mr. Robbie Moore
Register No. B16483
Pontiac Correctional Center
700 West Lincoln St., P.O. Box 99
Pontiac, IL 61764

Mr. Frank Young
Vermilion County State's Attorney
7 N. Vermilion
Danville, Illinois 61832

    The undersigned, being first duly sworn on oath, deposes and says that she has served the required number of copies of the attached *Finley* Motion in the above-entitled cause on the above named persons on January 31, 2006, by: ✓ United States Mail ___ Personal Service ___ United Parcel Service.

_Vicki McBride_
Office of the State Appellate Defender
Fifth Judicial District
117 North Tenth Street, Suite #300
Mt. Vernon, IL 62864
618-244-3466

COUNSEL FOR DEFENDANT-APPELLANT

SUBSCRIBED AND SWORN TO
Before me on January 31, 2006.

_Sheila Taaka_
NOTARY PUBLIC

> Official Seal
> Sheila Taaka
> Notary Public State of Illinois
> My Commission Expires 01/04/2010

Exhibit B

E-FILED
Friday, 06 July, 2007  11:39:43 AM
Clerk, U.S. District Court, ILCD

NO. 103157

IN THE

SUPREME COURT OF

THE STATE OF ILLINOIS

PEOPLE ~~OF THE~~ STATE OF ILLINOIS

~~PLAINTIFF  APPELLEE~~
RESPONDENT

VS

ROBBIE MOORE

PETITIONER, ~~APPELLANT~~

PETITION FOR LEAVE TO APPEAL
FROM THE APPELLATE COURT FOR
THE FOURTH JUDICIAL DISTRICT
NO. 4-05-0325
THERE HEARD ON APPEAL FROM THE
CIRCUIT COURT OF VERMILION
COUNTY, ILLINOIS. NO. 00-CF-246
HONORABLE
THOMAS J. FAHEY
JUDGE PRESIDING

PETITION FOR LEAVE TO APPEAL

By: Robbie Moore
ROBBIE MOORE
B-16483
P.O. BOX 99
PONTIAC, IL. 61764

35-081506
R-071106
No RH

FILED

AUG 2 - 2006

SUPREME COURT CLERK

1

No. _____

IN THE SUPREME COURT
OF THE STATE OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

    PLAINTIFF - APPELLEE

vs

ROBBIE MOORE

PETITIONER - APPELLANT

PETITION FOR LEAVE TO APPEAL FROM
THE APPELLATE COURT FOR THE
FOURTH JUDICIAL DISTRICT
No. 4-05-0325
THERE HEARD ON APPEAL FROM THE
CIRCUIT COURT OF VERMILION COUNTY,
ILLINOIS. NO. 00-CF-246
HONORABLE, THOMAS J. FAHEY
JUDGE PRESIDING

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF
THE STATE OF ILLINOIS

    MAY IT PLEASE THE COURT:

        PRAYER FOR LEAVE TO APPEAL

    ROBBIE MOORE, PETITIONER, APPELLANT, BY AND THROUGH HIM-SELF
PRO-SE, RESPECTFULLY AND HUMBLY MOVES THIS HONORABLE COURT
PURSUANT TO SUPREME COURT RULES 315 AND 612, FOR LEAVE TO
FILE HIS APPEAL, FROM THE DECISION OF THE APPELLATE COURT OF
ILLINOIS, FOURTH JUDICIAL DISTRICT, WHICH AFFIRMED THE
DISMISSAL OF PETITIONER'S POST CONVICTION PETITION, AND
APPELLATE COUNSEL'S, MOTION TO WITHDRAW, PURSUANT TO A "FINLEY"
BRIEF.

2

## HISTORY OF THE CASE

PETITIONER STATES, THAT A HISTORY OF THE CASE, THE PROCEDURAL BACKGROUND AND THE STATEMENT OF FACTS IS CONTAINED WITH IN APPELLATE ATTORNEY'S, MOTION TO WITHDRAW, AND THE COURT'S OPINION'S UNDER A RULE 23 RULING IN WHICH PETITIONER NO LONGER HAS COPIES OF THOSE RULE 23 OPINION'S, AND HAS BEEN UNABLE TO RE-OBTAIN SAID DOCUMENTS/OPINION'S BASED UPON COUNSEL'S REFUSAL TO FORWARD SAID COPIES TO THE PETITIONER.

HOWEVER, FOR THIS HONORABLE COURT'S CONSIDERATION, PETITIONER HAS ATTACHED HERETO, A COPY OF COUNSEL'S MOTION TO WITHDRAW, MARKED AS EXHIBIT A, AND A COPY OF THE FOURTH JUDICIAL DISTRICT'S OPINION, FILED JULY 11, 2006, MARKED AS EXHIBIT B, AND A COPY OF PETITIONER'S, FIRST AMENDED PETITION FOR POST-CONVICTION RELIEF, MARKED AS EXHIBIT C, AND A COPY OF THE COLLOQUY OF RECORD, FROM THE TESTIMONY OF THE MINOR PROSECUTRIX J.G., MARKED AS EXHIBIT D, FOR THIS COURTS CONSIDERATION IN ORDER TO ANSWER THE QUESTION OF, WHETHER OR NOT, PETITIONER'S CONSTITUTIONAL RIGHT'S TO CONFRONT HIS ACCUSER WAS VIOLATED BY THE COURT'S, AND A.S.A. ACTIONS, AND IN FULL AGREEMENT WITH PETITIONER'S TRIAL COUNSEL. FOR THE RECORD (EX. D, ATTACHED), SUPPORTS

3

THE FACT THAT J.G. _NEVER_ MADE AN IN COURT IDENTIFICATION, WAS _NOT_ THE FIRST WITNESS CALLED BY THE STATE, AND _NO_ TIMELY OBJECTION'S TO THIS SET-UP BY THE COURT AND A.S.A.' THUS, VIOLATION'S OF THE MANDATED PROCEDURE'S OF SECTION 115-10

MOREOVER, PETITIONER HEREIN HUMBLY REQUEST'S OF THIS HONORABLE COURT TO TAKE "JUDICIAL NOTICE", THAT THIS PETITIONER DOES NOT UNDERSTAND THE PROPER MANNER WITH IN WHICH TO RAISE, OR PROPERLY ARGUE THE POINTS RELIED ON FOR REVERSAL FROM THE JUDGMENT OF THE APPELLATE COURTS OPINION _OR_, HOW TO PROPERLY RAISE ARGUMENT TO THE APPELLATE COURTS DECISION. WHEREAS PETITIONER HAS HAD TO SEEK HELP FROM THE PARALEGALS HERE, MERELY TO TIMELY REQUEST LEAVE TO APPEAL TO THIS HONORABLE COURT.

HOWEVER, PETITIONER IS BEING ADVISED BY THE PARALEGALS HERE THAT SEVERAL ERROR'S/VIOLATION'S HAVE OCCURRED DURING THE PROCEEDING'S, TRIAL, SENTENCING, AND WITH SEVERAL MOTION'S, PLEADING'S FILED SINCE THE CONVICTION, WHICH HAVE BEEN OVER-LOOKED/BYPASSED _OR_, MISUNDERSTOOD. WHEREAS PETITIONER'S BELIEF OF SUCH ERROR'S/VIOLATION'S ARE REINFORCED BY THE ASSISTANCE OF THESE PARALEGALS. WHEREAS, BASED UPON THOSE ERROR'S/VIOLATION'S, PETITIONER'S BELIEF OF BEING

4

DENIED A FAIR AND IMPARTIAL TRIAL, AND BEING DENIED EFFECTIVE ASSISTANCE OF APPOINTED ATTORNEY'S, PETITIONER'S BELIE'S ARE REAFFIRMED.

ADDITIONALLY, PETITIONER WOULD REQUEST OF THIS HONORABLE COURT TO TAKE "JUDICIAL NOTICE" OF THE APPELLATE COURT'S OPINION, BASED ON THE FACT THAT SAID OPINION SUPPORTS PETITIONER'S BELIEF OF THE COURT'S ERROR. IN THAT, UNDER THE SUPREME COURTS OPINION OF PEOPLE V. RIVERA, 763 N.E.2D 306, WHEREAS THIS COURT STATED, THAT IT WAS TRIAL COURTS ERROR, FOR THE CIRCUIT COURT JUDGE TO DISMISS CERTAIN CLAIM'S/ISSUE'S, WHILE OTHER ISSUE'S/CLAIM'S WOULD BE PERMITED TO ADVANCE, WITH THE APPOINTMENT OF COUNSEL. FOR SAID OPINION, (EX.8) MAKES CLEAR THAT THE CIRCUIT COURT JUDGE DID DISMISS SEVERAL OF PETITIONER'S ISSUE'S RAISED, BUT, PERMITED ONE ISSUE TO ADVANCE, AND TO BE AMENDED. THUS, ERROR WAS CREATED BY THE COURT'S ACTION'S.

THEREFORE PETITIONER STATES, THAT HE IS OF THE BELIEF THAT THE FOLLOWING CASE LAW CONTROL'S THIS INSTANT CAUSE OF ACTION, IN WHICH PETITIONER HUMBLY REQUESTS THAT HIS LEAVE TO APPEAL WILL BE GRANTED.

1) THE ILLINOIS SUPREME COURT OPINION OF, PEOPLE V. RIVERA, 763 N.E.2D 306, WHEREAS THIS HONORABLE COURT STATED, THAT

5

THE TRIAL COURT JUDGE ERRED WHEN DISMISSING SEVERAL OF THE PETITIONERS ISSUE'S/CLAIM'S RAISED WITHIN HIS PRO-SE POST CONVICTION PETITION, AND PERMITING OTHER ISSUES/CLAIM'S TO ADVANCE, WITH THE APPOINTMENT OF COUNSEL. THUS, ERROR OCCURRED WITHIN THE COURTS EVIDENTIARY RULING.

2) PEOPLE V. SMITH, 582 N.E.2D 317, WHICH STATES THAT, THE STATE HAS TO GIVE NOTICE OF THEIR INTENT TO PROCEED WITH A 115-10 HEARING. WHEREAS IN THIS INSTANT CAUSE OF ACTION NO NOTICE WAS TENDERED.

3) PEOPLE V. BRADLEY, 526 N.E.2D 916, WHICH STATES THAT, UNDER THE CORROBORATIVE COMPLAINT PROVISIONS OF 115-10, NO DETAILS OR, IN COURT IDENTIFICATION CAN BE SUBSTAINED UNTIL THE MINOR PROSECUTRIX HAS TESTIFIED, AND HAS MADE AN IN COURT IDENTIFICATION. WHEREAS, EX. D, ATTACHED SUPPORTS THE FACT THAT J.G., WAS NOT THE STATES FIRST WITNESS CALLED, AND THE STATE DID NOT REQUEST/HAVE J.G. MAKE AN IN COURT IDENTIFICATION OF THE PETITIONER. THUS, ERROR WAS CREATED BY THE STATES ROTATION OF WITNESS', AND OTHER'S WHO DID MAKE AN IN COURT IDENTIFICATION, AND TESTIFIED TO DETAILS OF THE COMPLAINT, THUS DENYING PETITIONER HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL.

4) <u>PEOPLE V. LOFTON</u>, 708 N.E. 2D 569, WHERE THAT COURT STATED, THAT ERROR OCCURRED OF PETITIONERS RIGHT TO CONFRONT THE ALLEGED VICTIM, WHERE THE COURTS SET-UP OBSTRUCTED PETITIONERS VIEW OF THE MINOR PROSECUTRIX WHEN TESTIFING. WHEREAS SAID CASE IS FACTUALLY SIMILAR TO PETITIONER'S. WHEREAS, THE COURT'S INSTRUCTIONS DENIED PETITIONERS CONSTITUTIONAL RIGHT TO CONFRONT ALL STATE WITNESS. THUS, ERROR WAS CREATED BY THE COURTS SET-UP WHEN THE MINOR PROSECUTRIX WAS TESTIFING BEFORE THE COURT.

THEREFORE, WHEN CONSIDERATING THESE ERROR'S/VIOLATION'S SUPPORTED BY THE RECORD, AND CITED CASE LAW, THE PETITIONER HUMBLY REQUEST'S THAT THIS HONORABLE COURT GRANT THE RELIEF REQUESTED BY, PERMITING THIS INSTANT CAUSE TO PROCEED IN THIS HONORABLE COURT, OR IN THE ALTERNATIVE, ENTER AN ORDER TO THE APPELLATE COURT GRANTING PETITIONER AN OPPORTUNITY TO HAVE ALL ISSUE'S PROPERLY BRIEFED FOR REVIEW, <u>OR</u>, REMAND THIS CAUSE BACK TO THE CIRCUIT COURT, GRANTING PETITIONER AN EVIDENTIARY HEARING TO DETERMINE THE PREJUDICIAL EFFECT ENDURED BY TRIAL COUNSEL'S FAILURE TO OBJECT, AND THE STATE'S VIOLATION'S WHEN DEALING WITH THE 115-10 HEARING, AND OR, THE TRIAL COURT'S RULING, WHICH CREATED THE ERROR, AND ALL ELSE, JUST AND PROPER.

RESPECTFULLY SUBMITTED

Robbie Moore

7

STATE OF ILLINOIS )
                  )SS
COUNTY OF         )

## AFFIDAVIT

I, _Robbie Moore_ do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts:

(1) There is Ineffective Assistance of Council at the Circuit Court (3 times), and at the Appellate Level (2 times).

(2) The language that Creates the Statute of Aggrivated Criminal Sexual Assault causes the Statute to be Unconstitutional.

(3) the Accusers severly contridicted themselves.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _25th_ day of _July_, 200_6_.

_Robbie Moore_
                                                    **Affiant**

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, *Robbie Moore*, affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109, 28 USC 1746 or 18 USC 1621 that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the foregoing document(s) is/are known to me and is/are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this *25th* day of *July*, 200*6*.

*Robbie Moore*

**Affiant**

E-FILED
Friday, 06 July, 2007  11:39:59 AM
Clerk, U.S. District Court, ILCD

FILED
JUL 1 1 2006
CLERK OF THE
APPELLATE COURT, 4TH DIST.

NO. 4-05-0325

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|       Plaintiff-Appellee, | ) | Circuit Court of |
|       v. | ) | Vermilion County |
| ROBBIE MOORE, | ) | No. 00CF246 |
|       Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Fahey, |
| | ) | Judge Presiding. |

---

ORDER

    Defendant, Robbie Moore, appeals from the denial of his postconviction petition.  We affirm.

    Following a bench trial in 1997, defendant was convicted and sentenced to 20 years' imprisonment on each of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1 (West 1996) and seven years' imprisonment for one count of aggravated criminal sexual abuse (720 ILCS 5-12-16(d) (West 1994), the sentences to be served consecutively.  Defendant successfully appealed, and the supreme court reversed his convictions for predatory criminal sexual assault, finding the crime of predatory criminal sexual assault did not exist at the time of the offense since that offense was created as part of an unconstitutional public act.  People v. Tellez-Vallencia, 188 Ill. 2d 523, 526, 723 N.E.2d 223, 225 (1999).

    Defendant was retried and a jury found defendant guilty of three counts of aggravated criminal sexual assault.  720 ILCS 5/12-14(b)(1) (West 1994).  The trial court sentenced defendant

to three consecutive terms of 30 years' imprisonment.  Defendant
appealed, arguing (1) the State failed to notify defendant of an
intent to ask the court to admit into evidence statements under
section 115-10 of the Code of Criminal Procedure of 1963 (Code)
(725 ILCS 5/115-10 (West 2000)), and he was entitled to a new
hearing to determine the admissibility of those statements, (2)
he was not proven guilty beyond a reasonable doubt, (3) he was
entitled to a new sentencing hearing because he received a longer
sentence after retrial following a successful appeal, and (4) he
was entitled to 1,439 days' additional sentencing credit.  This
court reduced defendant's sentences to 20 years' imprisonment for
each count, to be served consecutively, and affirmed, in all
other respects, the convictions and sentences as modified.
People v. Moore, No. 4-00-0890 (December 12, 2002) (unpublished
order under Supreme Court Rule 23).

On May 27, 2003, defendant filed a pro se petition for
postconviction relief from his first and second trials, arguing
(1) this court did not properly consider relevant case law, (2)
the State did not prove all elements of his guilt beyond a
reasonable doubt, (3) the trial court denied his sixth amendment
right to confront his accuser, (4) his trial counsel was
ineffective for failing to object to the placement of the child-
victim out of defendant's line of sight as the child was
testifying, (5) his trial counsel was ineffective for failing to
impeach all the State's witnesses, (6) his trial counsel should
have tendered a "lesser offence [sic] instruction," and (7) his

- 2 -

appellate counsel was ineffective for failing to raise the above issues on direct appeal.

On June 19, 2003, in a written order, the trial court dismissed defendant's postconviction claims regarding his first conviction as patently without merit. However, the court did find defendant's allegation regarding the placement of the child victim during the child's testimony of possible constitutional dimension and appointed counsel for defendant. On September 21, 2004, appointed counsel filed a first amended petition for postconviction relief, arguing during the testimony of the child victim, the State's Attorney and defense counsel were positioned by the trial court in such a fashion as to obstruct defendant's view of the witness, and defendant's trial counsel was ineffective for failing to timely object to the obstruction in view. In support of his first amended petition for postconviction relief, defendant signed an affidavit in support of the above allegations. Defendant stated because his view of the witness was obstructed, he was unable to see the child's facial expressions or judge his demeanor, and as a result, was unable to effectively aid his attorney during the cross-examination of the witness.

On April 14, 2005, an evidentiary hearing was held on defendant's first amended petition for postconviction relief. Defendant testified that J.G. was called to testify at defendant's retrial. Initially, J.G. sat near the stenographer, but at some point during his testimony he moved and sat on the

step that led to the judge's bench. Defendant testified he was unable to see J.G. once he moved and was unable to effectively assist his attorney during the cross-examination of the child. On cross-examination, defendant described the layout of the courtroom where his retrial took place. He also testified that the trial judge instructed the Assistant State's Attorney and defendant's attorney to stand in such a way so the child could only see the judge, the jury and the attorney asking questions. Defendant testified he did not request to see the witness at any time.

The State called Larry Mills, Assistant State's Attorney, to testify. Mills prosecuted each of the two cases against defendant. He testified defendant's original trial and retrial were each held in different court rooms, and he described the courtroom where the retrial was conducted. Mills testified the child was "petrified" to testify. To calm the child, Mills explained that he would not have to look at the defendant while testifying, but could instead look at the jury or at the person asking questions. Mills testified the judge then asked the child a few questions and gave the child a toy monkey to hold while he was testifying. Mills stated there was no discussion between the judge and the attorneys regarding obstructing defendant's view of the witness. Mills also testified he did not recall the child leaving the stand at any point during his testimony. The court then journeyed to the courtroom where defendant's retrial was held. For the record, the judge described the courtroom's

- 4 -

dimensions and set up. The court then denied defendant's first amendment petition for postconviction relief. This appeal followed, and the Office of the State Appellate Defender (OSAD) was appointed to represent defendant.

On appeal, OSAD has motioned this court for leave to withdraw as counsel pursuant to Pennslyvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987). Defendant responded to OSAD's motion, arguing OSAD did not properly argue defendant's entire postconviction petition. In addition, defendant maintains his constitutional rights have been violated, the charging instrument was unlawful, and he was not proven guilty beyond a reasonable doubt. The State agrees with OSAD that no meritorious grounds for appellate relief exist.

In postconviction proceedings, review of evidentiary hearings are subject to the manifestly erroneous standard. People v. Chatman, 357 Ill. App. 3d 695, 704, 830 N.E.2d 21, 30 (2005). In such a hearing, the judge is the finder of fact, and it is function of the court to determine the credibility of witnesses, decide the weight to be given to individual testimony and resolve any conflicts therein. Chatman, 357 Ill. App. 3d at 704, 830 N.E.2d at 30. This court may not substitute its judgment for that of the trial court and will not reverse the trial court's decision unless it is clearly evident, plain and indisputable that the decision was erroneous. Chatman, 357 Ill. App. 3d at 704, 830 N.E.2d at 30.

In denying defendant's first amended petition for

- 5 -

postconviction relief, the trial court noted defendant incorrectly described the courtroom where his first trial took place rather than the courtroom where his retrial was held. In addition, the court stated the transcript of defendant's retrial did not reveal that the child ever moved from the witness stand. Rather, the only evidence defendant presented was his own recollection of events, which was directly contradicted by Mills. The trial court found Mills more credible, and that decision is not manifestly erroneous.

As to defendant's claim that OSAD did not properly review his entire postconviction petition, we note the only claim presented in defendant's first amended petition for postconviction relief involved the alleged deprivation of his constitutional right to confront his accuser. Defendant's pro se postconviction petition was not before the trial court and not at issue on appeal.

Defendant's claim that the charging instrument was defective is forfeited on review as it could have been raised on direct appeal and was not, and his claim that he was not proven guilty beyond a reasonable doubt was decided on direct appeal and is barred by the doctrine of res judicata. (See People v. Whitfield, 217 Ill. 2d 177, 183, 840 N.E.2d 658, 663 (2005), finding any issues which could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues which have previously been decided by a reviewing court are barred by the doctrine of res judicata).

- 6 -

For the foregoing reasons, we grant OSAD's motion to withdraw as counsel on appeal and affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., with MYERSCOUGH and KNECHT, JJ., concurring.

**E-FILED**
Friday, 06 July, 2007  11:40:13 AM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT
FOR THE FIFTH JUDICIAL CIRCUIT OF ILLINOIS
VERMILION COUNTY, DANVILLE, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 00-CF-246 |
| | ) | |
| ROBBIE J. MOORE, | ) | |
| Defendant. | ) | |

## FIRST AMENDED PETITION FOR POST-CONVICTION RELIEF

Now comes the Petitioner, ROBBIE J. MOORE, by and through his attorney, Douglas R.

Lawlyes, of LAWLYES & LAWLYES, pursuant to the Illinois Post-Conviction Hearing

Act, 725 ILCS 5/122-1 et. Seq., and respectfully moves this Honorable Court to vacate

the judgment of the Circuit Court of Vermilion County, Illinois, and in support thereof

states as follows:

1. That Petitioner is presently incarcerated at Pontiac Correctional Center.

2. That Petitioner was found guilty of the offense Aggravated Criminal Sexual Assault in Vermilion County Case 00-CF-246 on July 28, 2000.

3. That Petitioner filed Motion for New Trial or in the Alternative Judgment of Acquittal on August 7, 2000.

4. That Petitioner's Motion for New Trial or in the Alternative Judgment of Acquittal was denied on September 5, 2000.

5. That Petitioner was sentenced to three consecutive, thirty-year terms of incarceration, with credit for 91 days served, on September 5, 2000.

6. That Petitioner filed a Motion to Reconsider Sentence on September 7, 2000.

7. That Petitioner's Motion to Reconsider Sentence was denied on October 4, 2000.

8. That Petitioner filed a Notice to Appeal with the Appellate Court of the Fourth District of Illinois on October 12, 2000.

9.      That Petitioner filed a Post Conviction Relief Petition on May 9, 2003.

10.     That Attorney Brian Lawlyes was appointed to represent Petitioner in his Post Conviction Relief Petition on June 19, 2003.

11.     That Attorney Brian Lawlyes entered his appearance on July 18, 2003.

12.     That Attorney Brian Lawlyes filed a Motion for Extension of Tim within Which to Plead on July 18, 2003.

13.     That a Motion and Order for Substitution of Counsel was filed on July 29, 2003, appointing Attorney Douglas R. Lawlyes as counsel for Petitioner.

14.     That Petitioner's Constitutional right to confront the witnesses called against him was violated.  (See attached Affidavit of Robbie J. Moore)

15.     That the alleged victim, J.G., was called to testify against Petitioner at the jury trial in this matter.

16.     That during that testimony, the State's Attorney was positioned by the trial court in such a fashion as to obstruct the Petitioner's view of the witness, J.G. (See attached pages of transcript, p. 78)

17.     That during the cross examination of the witness, J.G., the Public Defender was instructed by the trial court to stand in front of the witness, again obstructing the Petitioner's view of the witness.  (See attached pages of transcript, p. 83)

18.     That Petitioner's right to effective assistance of counsel was violated.

19.     That the Public Defender representing Petitioner failed to timely object to the aforementioned obstructive placement of the questioning attorneys during the testimony of the alleged victim, J.G.  (See attached pages of trial transcript, p. 78-89)


Wherefore, Petitioner ROBBIE J. MOORE, prays:

    A.  That this Court will enter an Order vacating the conviction in 00-CF-246;

    B.  That this Court will enter an Order granting Petitioner a new trial;

1          THE COURT:  Good teacher.  What grade are you

2     going to be going into now?

3          THE WITNESS:  Fifth.

4          THE COURT:  You know what, I have a daughter

5     going into the fifth grade too.  She has hair about

6     your color.

7          Do you think we can do this.  All right.  You

8     just talk to Mr. Mills and Mr. Sohn when he questions

9     you.  I am sure he will be happy to come over here and

10    stand right in front of you so all you have to do is

11    look at the ladies and gentlemen on the jury, at the

12    lawyers, or me.  Can you do that all right.  You hang

13    onto your monkey.  He is your friend okay.

14                    DIRECT EXAMINATION

15                    BY MR. MILLS:

16         Q.  Jeffery, you told the judge you were ten?

17         A.  (Shaking head.)

18         MR. MILLS:  Answer out loud.

19         A.  Yes.

20         THE COURT:  Keep your voice up so the guy all

21    the way in the back can hear you.

22         A.  Yes.

23         MR. MILLS:  Q.  I am going to ask you to think

24    about four years ago when you were five years old okay.

1   Do you remember where you were living then?

2        A.   No.

3        Q.   Do you remember the house?   I am not asking

4   the address or anything.

5        A.   No.

6        Q.   Who were you living with back then?

7        A.   My mommy and dad.

8        Q.   And did you have a brother yet then?

9        A.   Yeah.

10        Q.   Do you remember meeting a guy named Rat?

11        A.   Yes.

12        Q.   How did you meet Rat?

13        A.   By Robert and Teddy.

14        Q.   Robert and Teddy Campbell?

15        A.   Yeah.

16        Q.   Did they live near you back then?

17        A.   Yes.

18        Q.   Where did Rat live, if you know?

19        A.   I don't remember.

20        Q.   Was it in the same area you did?

21        A.   Yeah.

22        Q.   Long ways away?

23        A.   Same area.

24        Q.   Okay.   What kind of a place did Rat live in?

1        A.   A trailer.

2        Q.   Do you remember who else lived at the

3   trailer with Rat?

4        A.   No.

5        Q.   Were there any kids that lived there, do you

6   remember?

7        A.   Yeah.

8        Q.   Do you remember who they were?

9        A.   One.

10       Q.   Who was that?

11       A.   Anthony.

12       Q.   Do you remember Anthony's mom's name?

13       A.   No.

14       Q.   How old was Anthony?

15       A.   I don't know.

16       Q.   About your age, older?

17       (A)   Yeah, younger.  Not older. *Anthony is much older*

18       Q.   Do you remember going over to that trailer

19   once and being alone with Rat?

20       (A)   No.  Robert was always there because I

21   always followed him.

22       Q.   Robert who?

23       A.   Campbell.

24       Q.   And what happened when you went over?

1      (A.)  He stuck his finger in my pants.

2      Q.  Who did?

3      A.  Rat.

4      Q.  Where was Robert when this happened?

5      A.  Playing with Anthony outside.

6      Q.  So you were inside or outside the trailer?

7      A.  Inside.

8      Q.  Was anybody else inside the trailer except

9  you and Rat?

10     A.  Teddy.

11     Q.  Where was Teddy, do you remember?

12     A.  He was in, I don't remember.

13     Q.  And what did Rat do?

14     A.  Stuck his finger in my pants.

15     Q.  In your pants?

16     A.  In my butt.

17     Q.  Okay.  Was it in your pants or actually in

18  your butt?

19     A.  My butt.

20     Q.  Okay.  What did you do when he did that?

21     A.  I ran.

22     Q.  Where did you run to?

23     A.  My mom. *then why did it take so long for him to talk to the cops?*

24     Q.  What did you do?

81

1            A.   Told her.

2            Q.   Did you later talk to the police about it

3   too?

4            A.   Yes.

5            Q.   Do you remember where you talked to the

6   police about it?

7            A.   No.

8            Q.   Okay.  Did this happen to you any other

9   time?

10           A.   No.

11           Q.   Did you know Rat before that day?

12           A.   Yeah.

13           Q.   Had you ever been in a room with him alone

14   before?

15           A.   No.

16           Q.   Did you go over there much with Rat or only

17   with other people?

18           A.   With other people.

19           Q.   Now, did anyone tell you what to say today?

20           A.   No.

21           Q.   What were you told about what you should

22   say?

23           A.   Nothing.

24           Q.   Okay.

1    A.  The truth.

2    Q.  Okay.  Do you want to be here today?

3    A.  No.

4    Q.  Why not?

5    A.  Because I am scared.

6    Q.  Scared of what?

7    A.  I don't know.

8    Q.  Are you scared of these people?

9    A.  No.

10    Q.  Are you scared of the judge?

11    A.  No.

12    Q.  What are you scared of?

13    A.  Him.

14    Q.  Him who?

15    A.  Rat.

16    MR. MILLS:  No other questions, Your Honor.

17    THE COURT:  Mr. Sohn.  The court would ask you

18  to direct your questions from up here if you would,

19  please.

20    MR. SOHN:  No problem, Your Honor.

21    THE COURT:  Got that monkey in your hand there,

22  buddy, all right.

23    MR. SOHN:  How is this?

24    THE COURT:  That would be great.

CROSS EXAMINATION

BY MR. SOHN:

Q.  Hi, Jeffery, how are you doing?

A.  Fine.

Q.  My name is Bill.  I have to ask you a few questions okay.

A.  Okay.

Q.  Jeffery, when you went down to Rat's house that time with your brother Robert; right?

A.  My cousin.

Q.  Your cousin Robert, Robert Campbell?

A.  Yeah.

Q.  Was Teddy there too?

A.  Yeah.

Q.  Did you all go together?

A.  No, Teddy was there already.

Q.  When you went down this was where Pam and Anthony lived; right?

A.  Yeah.

Q.  And Rat lived there too?

A.  Yeah.

Q.  When you got there, when you first got there what did you do?

A.  Played with Anthony.

1          Q.   Where was Anthony at?

2          A.   Outside.

3          Q.   Did your brother play with him too?

4          A.   No.

5          Q.   Where did your brother go?

6          A.   To the Fugates.

7          Q.   To where?

8          A.   Fugates.

9          THE COURT:  Can you folks hear?

10         MR. SOHN:  Fugates?  Some friends house?

11         A.   Yeah.

12         Q.   Okay.  Where was Teddy while you were

13   playing with Anthony?

14         A.   Inside.

15         Q.   When did you go inside?

16         A.   When Robert went in.

17         Q.   Excuse me?

18         A.   When Robert went in.

19         Q.   Did Robert come back from the Fugates?

20         A.   No.

21         Q.   No.  Where was Robert when you went there?

22         A.   With me.

23         Q.   You are playing outside with Anthony?

24         A.   Yeah.

1          Q.   Now, it's your brother that went to the

2     Fugates?

3          A.   Yeah.

4          Q.   He never came back?

5          A.   Huh?

6          Q.   Did he ever come back from the Fugates to

7     play with the other boys?

8          A.   No.

9          Q.   So you went inside?  Who was inside when you

10    and Rob went inside?

11         A.   Rat and Teddy.

12         Q.   When you went inside you saw Rat and Teddy.

13    What did you do?

14         (A.)  I don't know.  I don't remember.

15         Q.   Where were you and Rat when he supposedly

16    put his finger in you?

17         (A.)  Front room.

18         Q.   Where was Robert when this happened?

19         (A.)  With me. So Robert would have seen me and J.G.

20         Q.   Where was Teddy?

21         A.   Using the bathroom.

22         Q.   The back room?

23         A.   The bathroom.

24         Q.   When this happened did you yell for help?

1      A.  No, I ran.

2      Q.  Were your pants on when this happened?

3      A.  Yes.

4      Q.  Were your underpants on too?

5      A.  Yeah.

6      Q.  Jeffery, do you remember testifying against

7   Rat about three years ago?

8      A.  Yeah.

9      Q.  Did you say this happened in the kitchen

10  back then?

11     A.  I don't remember.

12     Q.  Where were you in the front room when this

13  happened?

14     A.  In the front room.

15     Q.  Were you on the floor?

16     A.  No.

17     Q.  Were you standing up?

18     A.  Yeah.

19     Q.  You were standing up?

20     A.  (Shaking head.)

21     THE COURT:  Answer is yes?  Jeffery, this lady

22  right over here in front of you is Sara and she takes

23  down what you say on that machine.  So that's why you

24  will have to make sure you answer out loud so she can

1  get it on her machine.

2          A.  Okay

3          MR. SOHN:  Q.  When you got home and told your

4  mother did they take you to the hospital?

5          A.  No.

6          Q.  Excuse me?

7          A.  No.

8          Q.  Where was Rat when this happened to you?

9          A.  In the front room with us.

10          Q.  Where was he standing?

11          A.  Behind me.

12          Q.  If you were going to the Public Safety

13  Building and talking to a police officer, Detective

14  Howard.

15          A.  Huh?

16          Q.  After this happened you went to the police

17  station and talked to Detective Howard?

18          A.  Yeah.

19          Q.  Were you scared when you talked to him?

20          A.  Yes.

21          Q.  Do you remember what happened at this time?

22  What happened at the time, Jeffery?

23          A.  What?

24          Q.  Do you remember all these things happening?

1          A.   Yes.

2          MR. SOHN:   I have no further questions, Your

3    Honor.

4          THE COURT:   Thank you, Mr. Sohn.

5          Mr. Mills.

6                        REDIRECT EXAMINATION

7                        BY MR. MILLS:

8          Q.   Jeffery, way back when this happened could

9    you read yet?

10         (A).  No. He was 6 years old!

11         MR. MILLS:   Thank you.   No other questions, Your

12   Honor.

13         THE COURT:   Okay.   And Jeffery, that's all you

14   have to do.   And you know what I bet Tom could take him

15   out that side door and you folks could meet him right

16   back there.   Thank you very much.

17         Mr. Mills, call your next witness.

18         MR. MILLS:   People would call John Howard.

19                        JOHN HOWARD

20   called as a witness on behalf of the State; having been

21   first duly sworn and then testified as follows:

22                        DIRECT EXAMINATION

23                        BY MR. MILLS:

24         Q.   Would you state your name and occupation,

IN THE
SUPREME COURT OF THE
STATE OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS  )
    Plaintiff,  )    96 - CF - 264
                     )           &amp;
                     )   Case No. 00 - CF - 246
      v.                )
                     )
ROBBIE MOORE          )
    Defendant, PETITIONER 

## PROOF/CERTIFICATE OF SERVICE

TO: HON. JOLEANN HORNYAK,    TO: HON. RICHARD DEVINE
                                     STATES ATTORNEY FOR COOK COUNTY
CLERK OF THE SUPREME COURT   300 DALEY CENTER PLAZA, R-309
  SUPREME COURT BUILDING     CHICAGO, IL. 60602
  SPRINGFIELD, IL. 62701

PLEASE TAKE NOTICE that on July 25th , 2006, I have placed the documents listed below in the institutional mail at PONTIAC Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: PETITIONERS TIMELY FILED PETITION FOR LEAVE TO APPEAL TO THE ILLINOIS SUPREME COURT, WITH ATTACHMENTS.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: 7-25-06

/s/ Robbie Moore
NAME: ROBBIE MOORE
IDOC#: B-16483
PONTIAC Correctional Center
P.O. BOX 99
    PONTIAC , IL 61764

Revised Feb 2002

NO. _____

IN THE

SUPREME COURT OF

THE STATE OF ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

    PLAINTIFF-APPELLEE

VS

ROBBIE MOORE

PETITIONER, APPELLANT

PETITION FOR LEAVE TO APPEAL

FROM THE APPELLATE COURT FOR

THE FOURTH JUDICIAL DISTRICT

NO. 4-05-0325

THERE HEARD ON APPEAL FROM THE

CIRCUIT COURT OF VERMILION

COUNTY, ILLINOIS. NO. 00-CF-246

HONORABLE

THOMAS J. FAHEY

JUDGE PRESIDING

PETITION FOR LEAVE TO APPEAL

BY: _Robbie Moore_

    ROBBIE MOORE

    B-16483

    P.O. BOX 99

    PONTIAC, IL. 61764

1

No. _____

IN THE SUPREME COURT
OF THE STATE OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | PETITION FOR LEAVE TO APPEAL FROM |
| PLAINTIFF- APPELLEE | THE APPELLATE COURT FOR THE |
| | FOURTH JUDICIAL DISTRICT |
| | NO. 4-05-0325 |
| VS | THERE HEARD ON APPEAL FROM THE |
| | CIRCUIT COURT OF VERMILION COUNTY, |
| ROBBIE MOORE | ILLINOIS. NO. 00-CF-246 |
| PETITIONER- APPELLANT | HONORABLE, THOMAS J. FAHEY |
| | JUDGE PRESIDING |

TO THE HONORABLE JUSTICES OF THE SUPREME COURT OF
THE STATE OF ILLINOIS

MAY IT PLEASE THE COURT:

PRAYER FOR LEAVE TO APPEAL

ROBBIE MOORE, PETITIONER, APPELLANT, BY AND THROUGH HIM-SELF
PRO-SE, RESPECTFULLY AND HUMBLY MOVES THIS HONORABLE COURT
PURSUANT TO SUPREME COURT RULES 315 AND 612, FOR LEAVE TO
FILE HIS APPEAL, FROM THE DECISION OF THE APPELLATE COURT OF
ILLINOIS, FOURTH JUDICIAL DISTRICT, WHICH AFFIRMED THE
DISMISSAL OF PETITIONER'S POST CONVICTION PETITION, AND
APPELLATE COUNSEL'S, MOTION TO WITHDRAW, PURSUANT TO A "FINLEY"
BRIEF.

2

## HISTORY OF THE CASE

PETITIONER STATES, THAT A HISTORY OF THE CASE, THE PROCEDURAL BACKGROUND AND THE STATEMENT OF FACTS IS CONTAINED WITH IN APPELLATE ATTORNEY'S, MOTION TO WITHDRAW, AND THE COURT'S OPINION'S UNDER A RULE 23 RULING IN WHICH PETITIONER NO LONGER HAS COPIES OF THOSE RULE 23 OPINION'S, AND HAS BEEN UNABLE TO RE-OBTAIN SAID DOCUMENTS/OPINION'S BASED UPON COUNSEL'S REFUSAL TO FOREWARD SAID COPIES TO THE PETITIONER.

HOWEVER, FOR THIS HONORABLE COURT'S CONSIDERATION, PETITIONER HAS ATTACHED HERETO, A COPY OF COUNSEL'S MOTION TO WITHDRAW, MARKED AS EXHIBIT A, AND A COPY OF THE FOURTH JUDICIAL DISTRICT'S OPINION, FILED JULY 11, 2006, MARKED AS EXHIBIT B, AND A COPY OF PETITIONER'S, FIRST AMENDED PETITION FOR POST-CONVICTION RELIEF, MARKED AS EXHIBIT C, AND A COPY OF THE COLLOQUY OF RECORD, FROM THE TESTIMONY OF THE MINOR PROSECUTRIX J.G., MARKED AS EXHIBIT D, FOR THIS COURTS CONSIDERATION IN ORDER TO ANSWER THE QUESTION OF, WHETHER OR NOT, PETITIONER'S CONSTITUTIONAL RIGHT'S TO CONFRONT HIS ACCUSER WAS VIOLATED BY THE COURT'S, AND A.S.A. ACTIONS, AND IN FULL AGREEMENT WITH PETITIONER'S TRIAL COUNSEL. FOR THE RECORD (EX. D, ATTACHED), SUPPORTS

THE FACT THAT J.G. NEVER MADE AN IN COURT IDENTIFICATION, WAS NOT THE FIRST WITNESS CALLED BY THE STATE, AND NO TIMELY OBJECTIONS TO THIS SET-UP BY THE COURT AND A.S.A.' THUS, VIOLATIONS OF THE MANDATED PROCEDURES OF SECTION 115-10

MOREOVER, PETITIONER HEREIN HUMBLY REQUESTS OF THIS HONORABLE COURT TO TAKE "JUDICIAL NOTICE", THAT THIS PETITIONER DOES NOT UNDERSTAND THE PROPER MANNER WITH IN WHICH TO RAISE, OR PROPERLY ARGUE THE POINTS RELIED ON FOR REVERSAL FROM THE JUDGMENT OF THE APPELLATE COURTS OPINION OR, HOW TO PROPERLY RAISE ARGUMENT TO THE APPELLATE COURTS DECISION. WHEREAS PETITIONER HAS HAD TO SEEK HELP FROM THE PARALEGALS HERE, MERELY TO TIMELY REQUEST LEAVE TO APPEAL TO THIS HONORABLE COURT.

HOWEVER, PETITIONER IS BEING ADVISED BY THE PARALEGALS HERE THAT SEVERAL ERRORS/VIOLATIONS HAVE OCCURRED DURING THE PROCEEDINGS, TRIAL, SENTENCING, AND WITH SEVERAL MOTIONS/ PLEADINGS FILED SINCE THE CONVICTION, WHICH HAVE BEEN OVER-LOOKED/BYPASSED OR, MISUNDERSTOOD. WHEREAS PETITIONER'S BELIEF OF SUCH ERRORS/VIOLATIONS ARE REINFORCED BY THE ASSISTANCE OF THESE PARALEGALS. WHEREAS, BASED UPON THOSE ERRORS/VIOLATIONS, PETITIONER'S BELIEF OF BEING

4

DENIED A FAIR AND IMPARTIAL TRIAL, AND BEING DENIED EFFECTIVE ASSISTANCE OF APPOINTED ATTORNEY'S, PETITIONER'S BELIE'S ARE REAFFIRMED.

ADDITIONALLY, PETITIONER WOULD REQUEST OF THIS HONORABLE COURT TO TAKE "JUDICIAL NOTICE" OF THE APPELLATE COURT'S OPINION, BASED ON THE FACT THAT SAID OPINION SUPPORTS PETITIONER'S BELIEF OF THE COURT'S ERROR. IN THAT, UNDER THE SUPREME COURTS OPINION OF <u>PEOPLE V. RIVERA</u>, 763 N.E.2D 306, WHEREAS THIS COURT STATED, THAT IT WAS TRIAL COURTS ERROR, FOR THE CIRCUIT COURT JUDGE TO DISMISS CERTAIN CLAIM'S/ISSUE'S, WHILE OTHER ISSUE'S/CLAIM'S WOULD BE PERMITED TO ADVANCE, WITH THE APPOINTMENT OF COUNSEL. FOR SAID OPINION, (EX.B) MAKES CLEAR THAT THE CIRCUIT COURT JUDGE DID DISMISS SEVERAL OF PETITIONER'S ISSUE'S RAISED, BUT, PERMITED ONE ISSUE TO ADVANCE, AND TO BE AMENDED. THUS, ERROR WAS CREATED BY THE COURT'S ACTION'S.

THEREFORE PETITIONER STATES, THAT HE IS OF THE BELIEF THAT THE FOLLOWING CASE LAW CONTROL'S THIS INSTANT CAUSE OF ACTION, IN WHICH PETITIONER HUMBLY REQUESTS THAT HIS LEAVE TO APPEAL WILL BE GRANTED.

1) THE ILLINOIS SUPREME COURT OPINION OF, <u>PEOPLE V. RIVERA</u>, 763 N.E.2D 306, WHEREAS THIS HONORABLE COURT STATED, THAT

THE TRIAL COURT JUDGE ERRED WHEN DISMISSING SEVERAL
OF THE PETITIONERS ISSUE'S/CLAIMS RAISED WITHIN HIS PRO-SE
POST CONVICTION PETITION, AND PERMITTING OTHER ISSUES/CLAIMS
TO ADVANCE, WITH THE APPOINTMENT OF COUNSEL. THUS, ERROR
OCCURRED WITHIN THE COURTS EVIDENTIARY RULINGS.

2) PEOPLE V. SMITH, 582 N.E.2D 317, WHICH STATES THAT, THE
STATE HAS TO GIVE NOTICE OF THEIR INTENT TO PROCEED WITH
A 115-10 HEARINGS. WHEREAS IN THIS INSTANT CAUSE OF ACTION
NO NOTICE WAS TENDERED.

3) PEOPLE V. BRADLEY, 526 N.E.2D 916, WHICH STATES THAT,
UNDER THE CORROBORATIVE COMPLAINT PROVISIONS OF 115-10,
NO DETAILS OR, IN COURT IDENTIFICATION CAN BE SUBSTAINED
UNTIL THE MINOR PROSECUTRIX HAS TESTIFIED, AND HAS MADE
AN IN COURT IDENTIFICATION. WHEREAS, EX. D, ATTACHED SUPPORTS
THE FACT THAT J.G., WAS NOT THE STATES FIRST WITNESS
CALLED, AND THE STATE DID NOT REQUEST/HAVE J.G. MAKE
AN IN COURT IDENTIFICATION OF THE PETITIONER. THUS, ERROR
WAS CREATED BY THE STATES ROTATION OF WITNESS', AND
OTHER'S WHO DID MAKE AN IN COURT IDENTIFICATION, AND
TESTIFIED TO DETAILS OF THE COMPLAINT, THUS DENYING
PETITIONER HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL.

6

4) PEOPLE V. LOFTON, 708 N.E. 2D 569, WHERE THAT COURT
STATED, THAT ERROR OCCURRED OF PETITIONERS RIGHT TO
CONFRONT THE ALLEGED VICTIM, WHERE THE COURTS SET-UP
OBSTRUCTED PETITIONERS VIEW OF THE MINOR PROSECUTRIX
WHEN TESTIFING. WHEREAS SAID CASE IS FACTUALLY SIMILAR
TO PETITIONER'S. WHEREAS, THE COURTS INSTRUCTIONS DENIED
PETITIONER'S CONSTITUTIONAL RIGHT TO CONFRONT ALL STATE
WITNESS. THUS, ERROR WAS CREATED BY THE COURTS SET-UP
WHEN THE MINOR PROSECUTRIX WAS TESTIFING BEFORE THE COURT.

THEREFORE, WHEN CONSIDERAING THESE ERROR'S/VIOLATIONS
SUPPORTED BY THE RECORD, AND CITED CASE LAW, THE PETITIONER
HUMBLY REQVEST'S THAT THIS HONORABLE COURT GRANT THE RELIEF
REQUESTED BY, PERMITING THIS INSTANT CAUSE TO PROCEED IN THIS
HONORABLE COURT, OR IN THE ALTERNATIVE, ENTER AN ORDER TO
THE APPELLATE COURT GRANTING PETITIONER AN OPPORTUNITY TO HAVE
ALL ISSUE'S PROPERLY BRIEFED FOR REVIEW, OR, REMAND THIS
CAUSE BACK TO THE CIRCUIT COURT, GRANTING PETITIONER
AN EVIDENTIARY HEARING TO DETERMINE THE PREJUDICIAL
EFFECT ENDURED BY TRIAL COUNSEL'S FAILURE TO OBJECT, AND
THE STATE'S VIOLATION'S WHEN DEALING WITH THE 115-10 HEARING,
AND OR, THE TRIAL COURT'S RULING, WHICH CREATED THE ERROR, AND
ALL ELSE, JUST AND PROPER.        RESPECTFULLY SUBMITTED
                                  Robbie Moore

7

IN THE ~~CIRCUIT~~ *Supreme* COURT FOR THE _4 th_ *District* ~~JUDICIAL~~ COURT

_____ COUNTY, ILLINOIS

Robbie Moore
_____  )
Petitioner                  )
                            )
v.                          )    No. _____
People of Illinois          )
_____
Respondent

## APPLICATION TO SUE OR DEFEND AS A POOR PERSON

Applicant, _Robbie Moore_, respectfully requests the Court, pursuant to 735 ILCS 5/5-105, and Rule 298 of the Supreme Court, to grant (him/her) leave to (sue/defend) as a poor person; in support applicant states that the following facts are true in substance and in fact:

1. I am the (Petitioner/Respondent) in the above captioned legal proceedings.
2. I am a poor person and unable to (prosecute/defend) this action and am unable to pay the costs, fees, and expenses of this action.
3. My occupation or means of subsistence:
   (a) I am not currently employed due to my imprisonment at _Pontiac_ Correctional Center, but I receive (a state stipend/nominal wages) of $_10_ per month.
   (b) The amount and source of all other income or support are:
   _None_
   _____
4. My total income for the preceding year was $_120.00_
5. The sources and amount of income expected by me hereafter are:
   _120.00_
6. The nature and current value of any property, real or personal, owned by me:
   (a) Real Estate: _None_
        Value: _____
   (b) Motor Vehicle: _None_
        Value: _____
   (c) Cash, savings, checking, etc.: _None_
        Value: _____
   (d) Prison Trust Account: $_1,4P_
        Value: _____
   (e) Other (eg., TV, etc.): _None_
        Value: _____
7. No applications for leave to sue or defend as a poor person were filed by me or on my behalf during the preceding year, except as follows:
   _____
   _____
8. I believe in good faith that I have a meritorious (claim/defense).

_Robbie Moore_
_____
(Your signature)

Type or print name _Robbie Moore_
Register Number _R16408_
_Pontiac_ Correctional Center
Box _499_
_Pontiac_, Illinois _61764_
(Petitioner/Respondent), Pro Se

# AFFIDAVIT OF SERVICE

I, *Robbie Moore*, state that I served a copy of the document to which this affidavit is attached upon each party, or, if represented by counsel, upon the attorney of record for said party (ies) by enclosing the same in a sealed envelope plainly addressed as is disclosed by the pleadings of record herein and by depositing each of such envelopes in the box designated for United States mail at *Pontiac* Correctional Center, *Pontiac* Illinois, together with the appropriate request to the prison official responsible to affix fully prepaid thereon, on this *25th* day of *July*, 20*06*.

*Robbie Moore*
Signature

# VERIFICATION

I, *Robbie Moore*, the undersigned, certify and state that:

1. I am the (Petitioner/Respondent) in the above captioned legal matter.

2. I have read the foregoing application and have knowledge of its contents; and

3. **Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth in the foregoing motion and this affidavit are true and correct except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.**

*Robbie Moore*
(Your signature)

STATE OF ILLINOIS )
                  )SS
COUNTY OF         )

## AFFIDAVIT

I, _Robbie Moore_ do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts:

(1) There is Ineffective Assistance of Council at the Circuit Court (3 times), and at the Appellate level (2 times).

(2) The Language that Creates the Statute of Aggrivated Criminal Sexual Assault causes the Statute to be Unconstitutional.

(3) the Accusers severally contridicted themselves.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this _25th_ day of _July_, 200_6_.

_Robbie Moore_
                                      Affiant

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, _Robbie Moore_, affiant, do hereby declare
and affirm under penalty of perjury as defined in 735 ILCS 5/1-109,
28 USC 1746 or 18 USC 1621 that everything contained herein is true
and accurate to the best of my knowledge and belief. I further declare
and affirm that the contents of the foregoing document(s) is/are known
to me and is/are accurate to the best of my knowledge and belief.
Finally, I do declare and affirm that the matter at hand is not taken
either frivolously or maliciously and that I believe the foregoing matter
is taken in good faith.

Signed on this _25th_ day of _July_,
200_6_.

_Robbie Moore_
**Affiant**

**E-FILED**
Friday, 06 July, 2007 11:41:37 AM
Clerk, U.S. District Court, ILCD

No. 4-05-0325

## IN THE APPELLATE COURT OF ILLINOIS

## FOURTH JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,**<br>      Plaintiff-Appellee, | )<br>)<br>)<br>) | Appeal from the Circuit Court<br>of the Fifth Judicial Circuit,<br>Vermilion County, Illinois. |
| -vs- | )<br>) | No. 00-CF-246 |
| **ROBBIE MOORE,**<br>      Defendant-Appellant. | )<br>)<br>)<br>) | Honorable<br>Thomas J. Fahey,<br>Judge Presiding. |

---

## MOTION TO WITHDRAW AS COUNSEL ON APPEAL

Now comes the Office of the State Appellate Defender (OSAD), the defendant's court-appointed attorney on appeal, by Assistant Defender John H. Gleason, and moves that This Court grant it leave to withdraw as counsel.

In support of its motion, OSAD states the following:

1. On May 24, 2000, the State filed an information charging Robbie J. Moore with three counts of aggravated criminal sexual assault. (Supp. Vol. I at R.C1-2) T.C. was the complainant in Counts I and II. J.G. was the complainant in Count III. The information alleged that both T.C. and J.G. were under the age of 13 years at the time of the alleged acts.

2. Trial by jury commenced on July 27, 2000. (Supp. Vol. II) On that date, the State called J.G. to testify. (Supp. Vol. II at R.75) J.G. testified. (Supp. Vol. II at R.76-89) The trial concluded on July 28, 2000 (Supp. Vol. III), with the return of guilty verdicts on all three counts. (Supp. Vol. III at R.39)

3. On September 6, 2000, the circuit court sentenced Moore to thirty years' imprisonment on each of the three counts, with the sentences to run consecutively. (R.C117) Moore appealed. (R.C121)

4. On direct appeal in App. Ct. No. 4-00-0890, Moore argued that (1) the State had failed to give him adequate notice of its intent to introduce evidence of out-of-court statements allegedly made by Moore's alleged child victims; (2) the evidence was insufficient to establish Moore's guilt as to the count involving J.G.; (3) his sentences were impermissibly lengthy; and (4) he was entitled to additional sentencing credit. This Court reduced each of Moore's three sentences to twenty years, with the sentences to be served consecutively, but otherwise affirmed the judgment of the circuit court. This Court remanded the cause for issuance of an amended judgment of sentence. *People v. Moore*, No. 4-00-0890 (December 12, 2002). On remand, the circuit court complied with the instruction of This Court, entering a written judgment sentencing Moore to twenty years' imprisonment for each of the three counts of aggravated criminal sexual assault, with the sentences to be served consecutively. (R.C26)

5. On May 27, 2003, Moore filed a *pro se* Petition for Post-Conviction Relief. (R.C31-36) The petition raised various points, including a claim that the trial judge had positioned J.G. and the lawyers in ways that obstructed Moore's view of J.G., thus depriving Moore of his right to confront one of his accusers. (R.C34) The circuit court appointed an attorney to represent Moore in post-conviction proceedings. (R.C38-39,43)

6. On September 21, 2004, Moore filed, through counsel, a "First Amended Petition for Post-Conviction Relief." (R.C46-48) The amended petition alleged that Moore had been deprived of his Sixth Amendment right to be confronted with the witnesses

against him at his trial. Specifically, the amended petition alleged that "the State's Attorney was positioned by the trial court in such a fashion as to obstruct the Petitioner's view of the witness, J.G.", and "[t]hat during cross[-]examination of the witness, J.G., the Public Defender was instructed by the trial court to stand in front of the witness, again obstructing the Petitioner's view of the witness." (R.C47) In a related claim, the amended petition alleged that Moore's public defender had provided constitutionally ineffective assistance, having "failed to timely object to the obstruction of Petitioner's view of the witness". (R.C47) Attached to the amended petition was an affidavit prepared by counsel and signed by Moore. (R.C49) In the affidavit, Moore swore that "the trial court positioned the alleged victim J.G. not on the witness stand but rather on some stairs situated behind the trial judge's bench during the questioning", and that his view of witness J.G. was thereby "obstructed." (R.C49)

7. On October 22, 2004, attorney Lawlyes filed a petition for attorney's fees. (R.C52) Attached to the petition is an invoice describing various tasks performed by Lawlyes. (R.C53) The invoice includes items such as these: "Review Mr. Moore's draft of Post Conviction Relief"; "Review Letter of Mr. Moore" (four such entries); "Visit with Robbie Moore" (two such entries); "Researched list of case and materials provided by Robbie Moore"; "Read complete trial transcript of 2000-CF-246"; and "Prepare Affidavit of Robbie Moore; Prepare First Amended Post Conviction Relief and Notice of Hearing." (R.C53)

8. On April 14, 2005, the circuit court held an evidentiary hearing on the amended petition for post-conviction relief. (Vol. IV) Robbie Moore testified that when J.G. was called to testify at Moore's trial, J.G. initially sat in a chair near the stenographer. (Vol. IV at) As J.G. sat in the chair, the trial judge questioned him. Neither the

prosecutor nor defense counsel questioned J.G. as he sat in the chair. (Vol. IV at 15-16) At some point during his testimony, J.G. moved from the chair to "[t]he step that leads up into the judge's bench." (Vol. IV at 5-6) With J.G. on the step, Moore could not see him, at all. (Vol. IV at 6) In addition, the trial judge "asked, uh, Mr. Mills [the prosecutor] and William Sohn [the defense attorney] to stand by the court stenographer to obstruct the view even further." (Vol. IV at 13) Moore recalled that the courtroom in which his trial was conducted was "[a]bout the same size" as the courtroom in which the evidentiary hearing was being held. (Vol. IV at 8)

9. The State called Larry Mills to testify at the evidentiary hearing. (Vol. IV at 17) Mills testified that he prosecuted Moore at trial. (Vol. IV at 17) Sometime before the trial, Mills told J.G. that when he testified, "he did not have to look towards the defendant's side of the courtroom." (Vol. IV at 22-23) When called to testify, J.G. sat in the witness chair. (Vol. IV at 22-23) Mills and the trial judge did not discuss any plan to obstruct Moore's view of J.G. (Vol. IV at 24-25) Nobody made any effort to obstruct Moore's view of J.G. (Vol. IV at 25) At trial, the defense did not object to the procedures surrounding J.G.'s testimony. (Vol. IV at 26) Mills did not remember anything obstructing Moore's view of J.G. (Vol. IV at 27) Mills did not recall J.G.'s moving from the witness chair during his testimony. (Vol. IV at 28)

10. After Moore and Mills testified, the post-conviction judge led the lawyers and Moore to the courtroom in which Moore's trial had been held. (Vol. IV at 33-34) The judge found that "contrary to what the defendant indicated, this courtroom is less than a quarter of the size of the courtroom where I presently sit." (Vol. IV at 34)

11. The post-conviction court indicated that it considered Moore's post-conviction testimony inconsistent with portions of the trial transcript. (Vol. IV at 50-51) Nevertheless, the court opined that the post-conviction dispute "comes down to

basically you have the assertion of Mr. Moore versus what the recollection - - his recollection versus Mr. Mills the Assistant State's Attorney's recollection." (Vol. IV at 51) The court denied the amended petition for post-conviction relief. (Vol. IV at 52-53)

12. Immediately after the evidentiary hearing, the circuit clerk filed a notice of appeal on Moore's behalf. (R.C58) The circuit court appointed the Office of the State Appellate Defender to represent Moore in his appeal from the order denying his amended petition. (Vol. IV at 53)

13. At an evidentiary hearing, the court is the finder of fact; it has the responsibility of making determinations as to the credibility of witnesses. *See* 725 ILCS 5/122-6 (West 2004); *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073 (1998).

14. "At an evidentiary hearing, the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights and the circuit court's decision will not be disturbed unless it is manifestly erroneous. The term 'manifest error' means error that is 'clearly evident, plain, and indisputable.'" *People v. Coleman*, 206 Ill. 2d 261, 277, 794 N.E.2d 275, 286 (2002) (citations omitted).

15. In this case, the post-conviction judge was free to believe Mills, and free to find Moore's testimony unreliable. The judge's ruling cannot reasonably be categorized as manifest error.

16. On October 25, 2005, undersigned counsel mailed Moore a letter explaining counsel's conclusion that the instant appeal lacks merit, and informing Moore of counsel's intention to ask This Court to allow the Office of the State Appellate Defender to withdraw as his attorney in the instant appeal.

17. This date, counsel is mailing to Moore a copy of the instant motion, along with

a letter informing him that he may respond to the instant motion by mailing such response to This Court at the address counsel provides in the letter, and further informing him that if he needs a copy of the common law record in order to prepare that response, he may request the record from This Court.

18. In *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990 (1987), the United States Supreme Court held that in collateral post-conviction proceedings, the United States Constitution does not require the full protection of the procedures set out in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967). Illinois courts have adopted this position. *See, e.g.*, *People v. Lee*, 251 Ill. App. 3d 63, 621 N.E.2d 287 (2d Dist. 1993). Counsel is filing the instant motion in lieu of a motion under *Anders*.

WHEREFORE, the Office of the State Appellate Defender prays that This Court:

(A) Grant Moore a reasonable opportunity to show cause why the judgment of the circuit court should not be affirmed, and why the Office of the State Appellate Defender should not be allowed to withdraw as counsel on appeal; and

(B) Grant the Appellate Defender leave to withdraw as counsel for Moore in the instant appeal.

Respectfully submitted,

**DANIEL M. KIRWAN**
Deputy Defender

**JOHN H. GLEASON**
Assistant Defender
Office of the State Appellate Defender
Fifth Judicial District
117 North Tenth Street, Suite #300
Mt. Vernon, IL 62864
618-244-3466

COUNSEL FOR DEFENDANT-APPELLANT

## No. 4-05-0325

## IN THE APPELLATE COURT OF ILLINOIS

## FOURTH JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) ) ) | Appeal from the Circuit Court of the Fifth Judicial Circuit, Vermilion County, Illinois. |
|    Plaintiff-Appellee, | ) ) | |
| -vs- | ) ) | No. 00-CF-246 |
| **ROBBIE MOORE,** | ) ) | Honorable |
|    Defendant-Appellant. | ) ) ) | Thomas J. Fahey, Judge Presiding. |

---

### PROOF OF SERVICE

Mr. Robert Biderman
Office of the State's Attorneys
Appellate Prosecutor
725 South Second Street
Springfield, Illinois 62704

Mr. Robbie Moore
Register No. B16483
Pontiac Correctional Center
700 West Lincoln St., P.O. Box 99
Pontiac, IL 61764

Mr. Frank Young
Vermilion County State's Attorney
7 N. Vermilion
Danville, Illinois 61832

   The undersigned, being first duly sworn on oath, deposes and says that she has served the required number of copies of the attached *Finley* Motion in the above-entitled cause on the above named persons on January 31, 2006, by: _✓_ United States Mail ___ Personal Service ___ United Parcel Service.

                                 _Vicki McBride_
Office of the State Appellate Defender
Fifth Judicial District
117 North Tenth Street, Suite #300
Mt. Vernon, IL 62864
618-244-3466

          COUNSEL FOR DEFENDANT-APPELLANT

SUBSCRIBED AND SWORN TO
Before me on January 31, 2006.

_Sheila Taaba_
NOTARY PUBLIC

> Official Seal
> Sheila Taaka
> Notary Public State of Illinois
> My Commission Expires 01/04/2010

E-FILED
Friday, 06 July, 2007  11:41:50 AM
Clerk, U.S. District Court, ILCD

NO. 4-05-0325

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
JUL 1 1 2006
CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>          Plaintiff-Appellee,<br>          v.<br>ROBBIE MOORE,<br>          Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from<br>Circuit Court of<br>Vermilion County<br>No. 00CF246<br><br>Honorable<br>Thomas J. Fahey,<br>Judge Presiding. |

ORDER

Defendant, Robbie Moore, appeals from the denial of his postconviction petition.  We affirm.

Following a bench trial in 1997, defendant was convicted and sentenced to 20 years' imprisonment on each of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1 (West 1996) and seven years' imprisonment for one count of aggravated criminal sexual abuse (720 ILCS 5-12-16(d) (West 1994), the sentences to be served consecutively.  Defendant successfully appealed, and the supreme court reversed his convictions for predatory criminal sexual assault, finding the crime of predatory criminal sexual assault did not exist at the time of the offense since that offense was created as part of an unconstitutional public act.  People v. Tellez-Vallencia, 188 Ill. 2d 523, 526, 723 N.E.2d 223, 225 (1999).

Defendant was retried and a jury found defendant guilty of three counts of aggravated criminal sexual assault.  720 ILCS 5/12-14(b)(1) (West 1994).  The trial court sentenced defendant

to three consecutive terms of 30 years' imprisonment.  Defendant
appealed, arguing (1) the State failed to notify defendant of an
intent to ask the court to admit into evidence statements under
section 115-10 of the Code of Criminal Procedure of 1963 (Code)
(725 ILCS 5/115-10 (West 2000)), and he was entitled to a new
hearing to determine the admissibility of those statements, (2)
he was not proven guilty beyond a reasonable doubt, (3) he was
entitled to a new sentencing hearing because he received a longer
sentence after retrial following a successful appeal, and (4) he
was entitled to 1,439 days' additional sentencing credit.  This
court reduced defendant's sentences to 20 years' imprisonment for
each count, to be served consecutively, and affirmed, in all
other respects, the convictions and sentences as modified.
People v. Moore, No. 4-00-0890 (December 12, 2002) (unpublished
order under Supreme Court Rule 23).

On May 27, 2003, defendant filed a pro se petition for
postconviction relief from his first and second trials, arguing
(1) this court did not properly consider relevant case law, (2)
the State did not prove all elements of his guilt beyond a
reasonable doubt, (3) the trial court denied his sixth amendment
right to confront his accuser, (4) his trial counsel was
ineffective for failing to object to the placement of the child-
victim out of defendant's line of sight as the child was
testifying, (5) his trial counsel was ineffective for failing to
impeach all the State's witnesses, (6) his trial counsel should
have tendered a "lesser offence [sic] instruction," and (7) his

- 2 -

appellate counsel was ineffective for failing to raise the above issues on direct appeal.

On June 19, 2003, in a written order, the trial court dismissed defendant's postconviction claims regarding his first conviction as patently without merit. However, the court did find defendant's allegation regarding the placement of the child victim during the child's testimony of possible constitutional dimension and appointed counsel for defendant. On September 21, 2004, appointed counsel filed a first amended petition for postconviction relief, arguing during the testimony of the child victim, the State's Attorney and defense counsel were positioned by the trial court in such a fashion as to obstruct defendant's view of the witness, and defendant's trial counsel was ineffective for failing to timely object to the obstruction in view. In support of his first amended petition for postconviction relief, defendant signed an affidavit in support of the above allegations. Defendant stated because his view of the witness was obstructed, he was unable to see the child's facial expressions or judge his demeanor, and as a result, was unable to effectively aid his attorney during the cross-examination of the witness.

On April 14, 2005, an evidentiary hearing was held on defendant's first amended petition for postconviction relief. Defendant testified that J.G. was called to testify at defendant's retrial. Initially, J.G. sat near the stenographer, but at some point during his testimony he moved and sat on the

- 3 -

step that led to the judge's bench.  Defendant testified he was
unable to see J.G. once he moved and was unable to effectively
assist his attorney during the cross-examination of the child.
On cross-examination, defendant described the layout of the
courtroom where his retrial took place.  He also testified that
the trial judge instructed the Assistant State's Attorney and
defendant's attorney to stand in such a way so the child could
only see the judge, the jury and the attorney asking questions.
Defendant testified he did not request to see the witness at any
time.

The State called Larry Mills, Assistant State's
Attorney, to testify.  Mills prosecuted each of the two cases
against defendant.  He testified defendant's original trial and
retrial were each held in different court rooms, and he described
the courtroom where the retrial was conducted.  Mills testified
the child was "petrified" to testify.  To calm the child, Mills
explained that he would not have to look at the defendant while
testifying, but could instead look at the jury or at the person
asking questions.  Mills testified the judge then asked the child
a few questions and gave the child a toy monkey to hold while he
was testifying.  Mills stated there was no discussion between the
judge and the attorneys regarding obstructing defendant's view of
the witness.  Mills also testified he did not recall the child
leaving the stand at any point during his testimony.  The court
then journeyed to the courtroom where defendant's retrial was
held.  For the record, the judge described the courtroom's

- 4 -

dimensions and set up.  The court then denied defendant's first amendment petition for postconviction relief.  This appeal followed, and the Office of the State Appellate Defender (OSAD) was appointed to represent defendant.

On appeal, OSAD has motioned this court for leave to withdraw as counsel pursuant to Pennslyvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987).  Defendant responded to OSAD's motion, arguing OSAD did not properly argue defendant's entire postconviction petition.  In addition, defendant maintains his constitutional rights have been violated, the charging instrument was unlawful, and he was not proven guilty beyond a reasonable doubt.  The State agrees with OSAD that no meritorious grounds for appellate relief exist.

In postconviction proceedings, review of evidentiary hearings are subject to the manifestly erroneous standard. People v. Chatman, 357 Ill. App. 3d 695, 704, 830 N.E.2d 21, 30 (2005). In such a hearing, the judge is the finder of fact, and it is function of the court to determine the credibility of witnesses, decide the weight to be given to individual testimony and resolve any conflicts therein. Chatman, 357 Ill. App. 3d at 704, 830 N.E.2d at 30.  This court may not substitute its judgment for that of the trial court and will not reverse the trial court's decision unless it is clearly evident, plain and indisputable that the decision was erroneous. Chatman, 357 Ill. App. 3d at 704, 830 N.E.2d at 30.

In denying defendant's first amended petition for

- 5 -

postconviction relief, the trial court noted defendant incorrectly described the courtroom where his first trial took place rather than the courtroom where his retrial was held.  In addition, the court stated the transcript of defendant's retrial did not reveal that the child ever moved from the witness stand. Rather, the only evidence defendant presented was his own recollection of events, which was directly contradicted by Mills. The trial court found Mills more credible, and that decision is not manifestly erroneous.

As to defendant's claim that OSAD did not properly review his entire postconviction petition, we note the only claim presented in defendant's first amended petition for postconviction relief involved the alleged deprivation of his constitutional right to confront his accuser.  Defendant's <u>pro</u> <u>se</u> postconviction petition was not before the trial court and not at issue on appeal.

Defendant's claim that the charging instrument was defective is forfeited on review as it could have been raised on direct appeal and was not, and his claim that he was not proven guilty beyond a reasonable doubt was decided on direct appeal and is barred by the doctrine of <u>res</u> <u>judicata</u>. (See <u>People v. Whitfield</u>, 217 Ill. 2d 177, 183, 840 N.E.2d 658, 663 (2005), finding any issues which could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues which have previously been decided by a reviewing court are barred by the doctrine of <u>res</u> <u>judicata</u>).

- 6 -

For the foregoing reasons, we grant OSAD's motion to withdraw as counsel on appeal and affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., with MYERSCOUGH and KNECHT, JJ., concurring.

**E-FILED**
Friday, 06 July, 2007  11:42:12 AM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT
FOR THE FIFTH JUDICIAL CIRCUIT OF ILLINOIS
VERMILION COUNTY, DANVILLE, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 00-CF-246 |
| | ) | |
| ROBBIE J. MOORE, | ) | |
| Defendant. | ) | |

## **FIRST AMENDED PETITION FOR POST-CONVICTION RELIEF**

Now comes the Petitioner, ROBBIE J. MOORE, by and through his attorney, Douglas R. Lawlyes, of LAWLYES & LAWLYES, pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 et. Seq., and respectfully moves this Honorable Court to vacate the judgment of the Circuit Court of Vermilion County, Illinois, and in support thereof states as follows:

1. That Petitioner is presently incarcerated at Pontiac Correctional Center.

2. That Petitioner was found guilty of the offense Aggravated Criminal Sexual Assault in Vermilion County Case 00-CF-246 on July 28, 2000.

3. That Petitioner filed Motion for New Trial or in the Alternative Judgment of Acquittal on August 7, 2000.

4. That Petitioner's Motion for New Trial or in the Alternative Judgment of Acquittal was denied on September 5, 2000.

5. That Petitioner was sentenced to three consecutive, thirty-year terms of incarceration, with credit for 91 days served, on September 5, 2000.

6. That Petitioner filed a Motion to Reconsider Sentence on September 7, 2000.

7. That Petitioner's Motion to Reconsider Sentence was denied on October 4, 2000.

8. That Petitioner filed a Notice to Appeal with the Appellate Court of the Fourth District of Illinois on October 12, 2000.

9. That Petitioner filed a Post Conviction Relief Petition on May 9, 2003.

10. That Attorney Brian Lawlyes was appointed to represent Petitioner in his Post Conviction Relief Petition on June 19, 2003.

11. That Attorney Brian Lawlyes entered his appearance on July 18, 2003.

12. That Attorney Brian Lawlyes filed a Motion for Extension of Tim within Which to Plead on July 18, 2003.

13. That a Motion and Order for Substitution of Counsel was filed on July 29, 2003, appointing Attorney Douglas R. Lawlyes as counsel for Petitioner.

14. That Petitioner's Constitutional right to confront the witnesses called against him was violated. (See attached Affidavit of Robbie J. Moore)

15. That the alleged victim, J.G., was called to testify against Petitioner at the jury trial in this matter.

16. That during that testimony, the State's Attorney was positioned by the trial court in such a fashion as to obstruct the Petitioner's view of the witness, J.G. (See attached pages of transcript, p. 78)

17. That during the cross examination of the witness, J.G., the Public Defender was instructed by the trial court to stand in front of the witness, again obstructing the Petitioner's view of the witness. (See attached pages of transcript, p. 83)

18. That Petitioner's right to effective assistance of counsel was violated.

19. That the Public Defender representing Petitioner failed to timely object to the aforementioned obstructive placement of the questioning attorneys during the testimony of the alleged victim, J.G. (See attached pages of trial transcript, p. 78-89)


Wherefore, Petitioner ROBBIE J. MOORE, prays:

A. That this Court will enter an Order vacating the conviction in 00-CF-246;

B. That this Court will enter an Order granting Petitioner a new trial;

*Ex. D.*  **E-FILED**
Friday, 06 July, 2007 11:42:33 AM
Clerk, U.S. District Court, ILCD

1     THE COURT:  Good teacher.  What grade are you

2  going to be going into now?

3     THE WITNESS:  Fifth.

4     THE COURT:  You know what, I have a daughter

5  going into the fifth grade too.  She has hair about

6  your color.

7     Do you think we can do this.  All right.  You

8  just talk to Mr. Mills and Mr. Sohn when he questions

9  you.  I am sure he will be happy to come over here and

10  stand right in front of you so all you have to do is

11  look at the ladies and gentlemen on the jury, at the

12  lawyers, or me.  Can you do that all right.  You hang

13  onto your monkey.  He is your friend okay.

14                  DIRECT EXAMINATION

15                  (BY MR. MILLS:)

16     Q.  Jeffery, you told the judge you were ten?

17     A.  (Shaking head.)

18     MR. MILLS:  Answer out loud.

19     A.  Yes.

20     THE COURT:  Keep your voice up so the guy all

21  the way in the back can hear you.

22     A.  Yes.

23     MR. MILLS:  Q.  I am going to ask you to think

24  about four years ago when you were five years old okay.

1    Do you remember where you were living then?

2        (A)  No.

3        Q.  Do you remember the house?  I am not asking

4    the address or anything.

5        (A)  No.

6        Q.  Who were you living with back then?

7        A.  My mommy and dad.

8        Q.  And did you have a brother yet then?

9        A.  Yeah.

10       Q.  Do you remember meeting a guy named Rat?

11       A.  Yes.

12       Q.  How did you meet Rat?

13       A.  By Robert and Teddy.

14       Q.  Robert and Teddy Campbell?

15       A.  Yeah.

16       Q.  Did they live near you back then?

17       A.  Yes.

18       Q.  Where did Rat live, if you know?

19       (A)  I don't remember.

20       Q.  Was it in the same area you did?

21       A.  Yeah.

22       Q.  Long ways away?

23       A.  Same area.

24       Q.  Okay.  What kind of a place did Rat live in?

1     A.  A trailer.

2     Q.  Do you remember who else lived at the

3  trailer with Rat?

4     A.  No.

5     Q.  Were there any kids that lived there, do you

6  remember?

7     A.  Yeah.

8     Q.  Do you remember who they were?

9     A.  One.

10    Q.  Who was that?

11    A.  Anthony.

12    Q.  Do you remember Anthony's mom's name?

13    A.  No.

14    Q.  How old was Anthony?

15    A.  I don't know.

16    Q.  About your age, older?

17    (A)  Yeah, younger.  Not older. *Anthony is much older* *(11 yrs)*

18    Q.  Do you remember going over to that trailer

19  once and being alone with Rat?

20    (A)  No.  Robert was always there because I

21  always followed him.

22    Q.  Robert who?

23    A.  Campbell.

24    Q.  And what happened when you went over?

1      A.  He stuck his finger in my pants.

2      Q.  Who did?

3      A.  Rat.

4      Q.  Where was Robert when this happened?

5      A.  Playing with Anthony outside.

6      Q.  So you were inside or outside the trailer?

7      A.  Inside.

8      Q.  Was anybody else inside the trailer except

9  you and Rat?

10     A.  Teddy.

11     Q.  Where was Teddy, do you remember?

12     A.  He was in, I don't remember.

13     Q.  And what did Rat do?

14     A.  Stuck his finger in my pants.

15     Q.  In your pants?

16     A.  In my butt.

17     Q.  Okay.  Was it in your pants or actually in

18  your butt?

19     A.  My butt.

20     Q.  Okay.  What did you do when he did that?

21     A.  I ran.

22     Q.  Where did you run to?

23     A.  My mom. *then why did it take So long for him to talk to the cops?*

24     Q.  What did you do?

81

1          A.   Told her.

2          Q.   Did you later talk to the police about it

3     too?

4          A.   Yes.

5          Q.   Do you remember where you talked to the

6     police about it?

7          A.   No.

8          Q.   Okay.  Did this happen to you any other

9     time?

10          A.   No.

11          Q.   Did you know Rat before that day?

12          A.   Yeah.

13          Q.   Had you ever been in a room with him alone

14     before?

15          A.   No.

16          Q.   Did you go over there much with Rat or only

17     with other people?

18          A.   With other people.

19          Q.   Now, did anyone tell you what to say today?

20          A.   No.

21          Q.   What were you told about what you should

22     say?

23          A.   Nothing.

24          Q.   Okay.

1      A.  The truth.

2      Q.  Okay.  Do you want to be here today?

3      A.  No.

4      Q.  Why not?

5      A.  Because I am scared.

6      Q.  Scared of what?

7      A.  I don't know.

8      Q.  Are you scared of these people?

9      A.  No.

10     Q.  Are you scared of the judge?

11     A.  No.

12     Q.  What are you scared of?

13     A.  Him.

14     Q.  Him who?

15     A.  Rat.

16     MR. MILLS:  No other questions, Your Honor.

17     THE COURT:  Mr. Sohn.  The court would ask you

18  to direct your questions from up here if you would,

19  please.

20     MR. SOHN:  No problem, Your Honor.

21     THE COURT:  Got that monkey in your hand there,

22  buddy, all right.

23     MR. SOHN:  How is this?

24     THE COURT:  That would be great.

```
1                    CROSS EXAMINATION
2                    BY MR. SOHN:
3        Q.  Hi, Jeffery, how are you doing?
4        A.  Fine.
5        Q.  My name is Bill.  I have to ask you a few
6   questions okay.
7        A.  Okay.
8        Q.  Jeffery, when you went down to Rat's house
9   that time with your brother Robert; right?
10       A.  My cousin.
11       Q.  Your cousin Robert, Robert Campbell?
12       A.  Yeah.
13      (Q)  Was Teddy there too?
14      (A)  Yeah.
15       Q.  Did you all go together?
16       A.  No, Teddy was there already.
17       Q.  When you went down this was where Pam and
18   Anthony lived; right?
19       A.  Yeah.
20       Q.  And Rat lived there too?
21       A.  Yeah.
22       Q.  When you got there, when you first got there
23   what did you do?
24       A.  Played with Anthony.
```

1       Q.   Where was Anthony at?

2       A.   Outside.

3       Q.   Did your brother play with him too?

4       A.   No.

5       Q.   Where did your brother go?

6       A.   To the Fugates.

7       Q.   To where?

8       A.   Fugates.

9       THE COURT:  Can you folks hear?

10      MR. SOHN:  Fugates?  Some friends house?

11      A.   Yeah.

12      Q.   Okay.  Where was Teddy while you were

13   playing with Anthony?

14      A.   Inside.

15      Q.   When did you go inside?

16      A.   When Robert went in.

17      Q.   Excuse me?

18      A.   When Robert went in.

19      Q.   Did Robert come back from the Fugates?

20      A.   No.

21      Q.   No.  Where was Robert when you went there?

22      A.   With me.

23      Q.   You are playing outside with Anthony?

24      A.   Yeah.

85

1          Q.   Now, it's your brother that went to the
2   Fugates?
3          A.   Yeah.
4          Q.   He never came back?
5          A.   Huh?
6          Q.   Did he ever come back from the Fugates to
7   play with the other boys?
8          A.   No.
9          Q.   So you went inside?  Who was inside when you
10  and Rob went inside?
11         A.   Rat and Teddy.
12         Q.   When you went inside you saw Rat and Teddy.
13  What did you do?
14         A.   I don't know.  I don't remember.
15         Q.   Where were you and Rat when he supposedly
16  put his finger in you?
17         A.   Front room.
18         Q.   Where was Robert when this happened?
19         A.   With me. So Robert would have seen me and J.G.
20         Q.   Where was Teddy?
21         A.   Using the bathroom.
22         Q.   The back room?
23         A.   The bathroom.
24         Q.   When this happened did you yell for help?

1       A.   No, I ran.

2       Q.   Were your pants on when this happened?

3      (A.)  Yes.

4       Q.   Were your underpants on too?

5      (A)   Yeah.

6       Q.   Jeffery, do you remember testifying against

7  Rat about three years ago?

8       A.   Yeah.

9       Q.   Did you say this happened in the kitchen

10  back then? *Yes he did !*

11     (A.)  I don't remember.

12      Q.   Where were you in the front room when this

13  happened?

14      A.   In the front room.

15      Q.   Were you on the floor?

16      A.   No.

17      Q.   Were you standing up?

18      A.   Yeah.

19      Q.   You were standing up?

20      A.   (Shaking head.)

21      THE COURT:  Answer is yes?  Jeffery, this lady

22  right over here in front of you is Sara and she takes

23  down what you say on that machine.  So that's why you

24  will have to make sure you answer out loud so she can

1    get it on her machine.

2          A.  Okay

3          MR. SOHN:  Q.  When you got home and told your

4    mother did they take you to the hospital?

5          A.  No.

6          Q.  Excuse me?

7          A.  No.

8          Q.  Where was Rat when this happened to you?

9          A.  In the front room with us.

10         Q.  Where was he standing?

11         A.  Behind me.

12         Q.  If you were going to the Public Safety

13   Building and talking to a police officer, Detective

14   Howard.

15         A.  Huh?

16         Q.  After this happened you went to the police

17   station and talked to Detective Howard?

18         A.  Yeah.

19         Q.  Were you scared when you talked to him?

20         A.  Yes.

21         Q.  Do you remember what happened at this time?

22   What happened at the time, Jeffery?

23         A.  What?

24         Q.  Do you remember all these things happening?

1      A.  Yes.

2      MR. SOHN:  I have no further questions, Your

3  Honor.

4      THE COURT:  Thank you, Mr. Sohn.

5      Mr. Mills.

6               REDIRECT EXAMINATION

7           BY MR. MILLS:

8      Q.  Jeffery, way back when this happened could

9  you read yet?

10      A.  No. *He was 6 years old!*

11      MR. MILLS:  Thank you.  No other questions, Your

12  Honor.

13      THE COURT:  Okay.  And Jeffery, that's all you

14  have to do.  And you know what I bet Tom could take him

15  out that side door and you folks could meet him right

16  back there.  Thank you very much.

17      Mr. Mills, call your next witness.

18      MR. MILLS:  People would call John Howard.

19               JOHN HOWARD

20  called as a witness on behalf of the State; having been

21  first duly sworn and then testified as follows:

22               DIRECT EXAMINATION

23           BY MR. MILLS:

24      Q.  Would you state your name and occupation,

Ex. D.   E-FILED
Friday, 06 July, 2007 11:42:46 AM
Clerk, U.S. District Court, ILCD

1    THE COURT:  Good teacher.  What grade are you

2  going to be going into now?

3    THE WITNESS:  Fifth.

4    THE COURT:  You know what, I have a daughter

5  going into the fifth grade too.  She has hair about

6  your color.

7    Do you think we can do this.  All right.  You

8  just talk to Mr. Mills and Mr. Sohn when he questions

9  you.  I am sure he will be happy to come over here and

10  stand right in front of you so all you have to do is

11  look at the ladies and gentlemen on the jury, at the

12  lawyers, or me.  Can you do that all right.  You hang

13  onto your monkey.  He is your friend okay.

14                    DIRECT EXAMINATION

15                  (BY MR. MILLS:)

16    Q.  Jeffery, you told the judge you were ten?

17    A.  (Shaking head.)

18    MR. MILLS:  Answer out loud.

19    A.  Yes.

20    THE COURT:  Keep your voice up so the guy all

21  the way in the back can hear you.

22    A.  Yes.

23    MR. MILLS:  Q.  I am going to ask you to think

24  about four years ago when you were five years old okay.

78

1    Do you remember where you were living then?

2         A.   No.

3         Q.   Do you remember the house?  I am not asking

4    the address or anything.

5         A.   No.

6         Q.   Who were you living with back then?

7         A.   My mommy and dad.

8         Q.   And did you have a brother yet then?

9         A.   Yeah.

10        Q.   Do you remember meeting a guy named Rat?

11        A.   Yes.

12        Q.   How did you meet Rat?

13        A.   By Robert and Teddy.

14        Q.   Robert and Teddy Campbell?

15        A.   Yeah.

16        Q.   Did they live near you back then?

17        A.   Yes.

18        Q.   Where did Rat live, if you know?

19        A.   I don't remember.

20        Q.   Was it in the same area you did?

21        A.   Yeah.

22        Q.   Long ways away?

23        A.   Same area.

24        Q.   Okay.  What kind of a place did Rat live in?

```
 1          A.   A trailer.

 2          Q.   Do you remember who else lived at the

 3   trailer with Rat?

 4          A.   No.

 5          Q.   Were there any kids that lived there, do you

 6   remember?

 7          A.   Yeah.

 8          Q.   Do you remember who they were?

 9          A.   One.

10          Q.   Who was that?

11          A.   Anthony.

12          Q.   Do you remember Anthony's mom's name?

13          A.   No.

14          Q.   How old was Anthony?

15          A.   I don't know.

16          Q.   About your age, older?
                                              (11 yrs)
17          A.   Yeah, younger.  Not older. Anthony is much older

18          Q.   Do you remember going over to that trailer

19   once and being alone with Rat?

20          A.   No.  Robert was always there because I

21   always followed him.

22          Q.   Robert who?

23          A.   Campbell.

24          Q.   And what happened when you went over?
```

1          (A)    He stuck his finger in my pants.

2          Q.    Who did?

3          A.    Rat.

4          Q.    Where was Robert when this happened?

5          A.    Playing with Anthony outside.

6          Q.    So you were inside or outside the trailer?

7          A.    Inside.

8          Q.    Was anybody else inside the trailer except

9    you and Rat?

10          A.    Teddy.

11          Q.    Where was Teddy, do you remember?

12          A.    He was in, I don't remember.

13          Q.    And what did Rat do?

14          A.    Stuck his finger in my pants.

15          Q.    In your pants?

16          A.    In my butt.

17          Q.    Okay.  Was it in your pants or actually in

18    your butt?

19          A.    My butt.

20          Q.    Okay.  What did you do when he did that?

21          A.    I ran.

22          Q.    Where did you run to?

23          A.    My mom. *then why did it take so long for him to talk to the cops?*

24          Q.    What did you do?

1          A.   Told her.

2          Q.   Did you later talk to the police about it

3     too?

4          A.   Yes.

5          Q.   Do you remember where you talked to the

6     police about it?

7          A.   No.

8          Q.   Okay.  Did this happen to you any other

9     time?

10         A.   No.

11         Q.   Did you know Rat before that day?

12         A.   Yeah.

13         Q.   Had you ever been in a room with him alone

14    before?

15         A.   No.

16         Q.   Did you go over there much with Rat or only

17    with other people?

18         A.   With other people.

19         Q.   Now, did anyone tell you what to say today?

20         A.   No.

21         Q.   What were you told about what you should

22    say?

23         A.   Nothing.

24         Q.   Okay.

1      A.   The truth.

2      Q.   Okay.   Do you want to be here today?

3      A.   No.

4      Q.   Why not?

5      A.   Because I am scared.

6      Q.   Scared of what?

7      A.   I don't know.

8      Q.   Are you scared of these people?

9      A.   No.

10     Q.   Are you scared of the judge?

11     A.   No.

12     Q.   What are you scared of?

13     A.   Him.

14     Q.   Him who?

15     A.   Rat.

16     MR. MILLS:  No other questions, Your Honor.

17     THE COURT:  Mr. Sohn.  The court would ask you

18  to direct your questions from up here if you would,

19  please.

20     MR. SOHN:  No problem, Your Honor.

21     THE COURT:  Got that monkey in your hand there,

22  buddy, all right.

23     MR. SOHN:  How is this?

24     THE COURT:  That would be great.

```
 1                    CROSS EXAMINATION

 2                    BY MR. SOHN:

 3         Q.   Hi, Jeffery, how are you doing?

 4         A.   Fine.

 5         Q.   My name is Bill.  I have to ask you a few

 6    questions okay.

 7         A.   Okay.

 8         Q.   Jeffery, when you went down to Rat's house

 9    that time with your brother Robert; right?

10         A.   My cousin.

11         Q.   Your cousin Robert, Robert Campbell?

12         A.   Yeah.

13        (Q)   Was Teddy there too?

14        (A)   Yeah.

15         Q.   Did you all go together?

16         A.   No, Teddy was there already.

17         Q.   When you went down this was where Pam and

18    Anthony lived; right?

19         A.   Yeah.

20         Q.   And Rat lived there too?

21         A.   Yeah.

22         Q.   When you got there, when you first got there

23    what did you do?

24         A.   Played with Anthony.
```

1      Q.  Where was Anthony at?

2      A.  Outside.

3      Q.  Did your brother play with him too?

4      A.  No.

5      Q.  Where did your brother go?

6      A.  To the Fugates.

7      Q.  To where?

8      A.  Fugates.

9      THE COURT:  Can you folks hear?

10     MR. SOHN:  Fugates?  Some friends house?

11     A.  Yeah.

12     Q.  Okay.  Where was Teddy while you were

13 playing with Anthony?

14     A.  Inside.

15     Q.  When did you go inside?

16     A.  When Robert went in.

17     Q.  Excuse me?

18     A.  When Robert went in.

19     Q.  Did Robert come back from the Fugates?

20     A.  No.

21     Q.  No.  Where was Robert when you went there?

22     A.  With me.

23     Q.  You are playing outside with Anthony?

24     A.  Yeah.

```
1        Q.  Now, it's your brother that went to the
2   Fugates?
3        A.  Yeah.
4        Q.  He never came back?
5        A.  Huh?
6        Q.  Did he ever come back from the Fugates to
7   play with the other boys?
8        A.  No.
9        Q.  So you went inside?  Who was inside when you
10  and Rob went inside?
11       A.  Rat and Teddy.
12       Q.  When you went inside you saw Rat and Teddy.
13  What did you do?
14       A.  I don't know.  I don't remember.
15       Q.  Where were you and Rat when he supposedly
16  put his finger in you?
17       A.  Front room.
18       Q.  Where was Robert when this happened?
19       A.  With me. So Robert would have seen me and J.G.
20       Q.  Where was Teddy?
21       A.  Using the bathroom.
22       Q.  The back room?
23       A.  The bathroom.
24       Q.  When this happened did you yell for help?
```

86

```
 1          A.   No, I ran.

 2          Q.   Were your pants on when this happened?

 3         (A.)  Yes.

 4          Q.   Were your underpants on too?

 5         (A)   Yeah.

 6          Q.   Jeffery, do you remember testifying against

 7   Rat about three years ago?

 8          A.   Yeah.

 9          Q.   Did you say this happened in the kitchen

10   back then? Yes he did!

11         (A.)  I don't remember.

12          Q.   Where were you in the front room when this

13   happened?

14          A.   In the front room.

15          Q.   Were you on the floor?

16          A.   No.

17          Q.   Were you standing up?

18          A.   Yeah.

19          Q.   You were standing up?

20          A.   (Shaking head.)

21          THE COURT:   Answer is yes?  Jeffery, this lady

22   right over here in front of you is Sara and she takes

23   down what you say on that machine.  So that's why you

24   will have to make sure you answer out loud so she can
```

87

1   get it on her machine.

2        A.   Okay

3        MR. SOHN:   Q.   When you got home and told your

4   mother did they take you to the hospital?

5        A.   No.

6        Q.   Excuse me?

7        A.   No.

8        Q.   Where was Rat when this happened to you?

9        A.   In the front room with us.

10       Q.   Where was he standing?

11       A.   Behind me.

12       Q.   If you were going to the Public Safety

13  Building and talking to a police officer, Detective

14  Howard.

15       A.   Huh?

16       Q.   After this happened you went to the police

17  station and talked to Detective Howard?

18       A.   Yeah.

19       Q.   Were you scared when you talked to him?

20       A.   Yes.

21       Q.   Do you remember what happened at this time?

22  What happened at the time, Jeffery?

23       A.   What?

24       Q.   Do you remember all these things happening?

1        A.  Yes.

2        MR. SOHN:  I have no further questions, Your

3    Honor.

4        THE COURT:  Thank you, Mr. Sohn.

5        Mr. Mills.

6                    REDIRECT EXAMINATION

7                    BY MR. MILLS:

8        Q.  Jeffery, way back when this happened could

9    you read yet?

10       Ⓐ  No. *He was 6 years old!*

11       MR. MILLS:  Thank you.  No other questions, Your

12   Honor.

13       THE COURT:  Okay.  And Jeffery, that's all you

14   have to do.  And you know what I bet Tom could take him

15   out that side door and you folks could meet him right

16   back there.  Thank you very much.

17       Mr. Mills, call your next witness.

18       MR. MILLS:  People would call John Howard.

19                    JOHN HOWARD

20   called as a witness on behalf of the State; having been

21   first duly sworn and then testified as follows:

22                    DIRECT EXAMINATION

23                    BY MR. MILLS:

24       Q.  Would you state your name and occupation,