**E-FILED**
Monday, 07 April, 2008  03:55:25 PM
Clerk, U.S. District Court, ILCD

Robbie Moore

Plaintiff

V.

~~Peter~~ Warden McCann

Respondant

Case No.: 2:07-cv-2062

Judge: Michael P. McCuskey

## Motion of Supplemental

Here comes the Petitioner Robbie Moore on the 2nd day of the month of ~~May~~ April within the year of 2008, requesting this honorable Court to allow the attached documents (recently received by the Petitioner) to be attached to the Pending Habeas Corpus for the coloberate Issues Raised by the Petitioner.

_Robbie J. Moore_
Robbie Moore
# B-16483
Stateville C.C.
P.O. Box 112
Joliet, IL. 60434

Pro Se.

**FILED**

APR 0 7 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**E-FILED**
Monday, 07 April, 2008  03:55:56 PM
Clerk, U.S. District Court, ILCD

**People v. Moore**
295 Ill.App.3d 676, 694 N.E.2d 184
Ill.App. 4 Dist.,1998.
March 18, 1998 (Approx. 9 pages)

295 Ill.App.3d 676, 694 N.E.2d 184, 230 Ill.Dec. 553

Appellate Court of Illinois,
Fourth District.
The **PEOPLE** of the State of Illinois, Plaintiff-Appellee,
v.
**Robbie** J. **MOORE**, Defendant-Appellant.
No. 4-97-0413.
March 18, 1998.
Modified on Denial of Rehearing
April 22, 1998.


Defendant was convicted in the Circuit Court, Vermilion County, Thomas J. Fahey, J., of three counts of predatory criminal sexual assault of child and one count of aggravated criminal sexual abuse. Defendant appealed. The Appellate Court, Steigmann, J., held that: (1) there was sufficient evidence to support convictions; (2) legislation which reenacted statute creating offense of predatory criminal sexual assault of child could not apply retroactively to defendant's conduct; (3) name of offense for which defendant was convicted would be changed from predatory criminal sexual assault of child to preexisting offense of aggravated criminal sexual assault; and (4) legislation which reenacted truth-in-sentencing provisions could not apply retroactively to defendant.

Affirmed as modified and remanded with directions.


West Headnotes


[1] KeyCite Notes

    37 Assault and Battery
        37II Criminal Responsibility
            37II(B) Prosecution
                37k91.1 Weight and Sufficiency of Evidence
                    37k91.9 k. Indecent Assault. Most Cited Cases
                    (Formerly 37k92(5))

Testimony of teenage victim was sufficient, by itself, to support defendant's conviction for aggravated criminal sexual abuse; state was not required to provide corroboration for victim's testimony. S.H.A. 720 ILCS 5/12-16(d). How?

*[handwritten: One must be found guilty BEYoUND a reasonal doubt!]*

[2] KeyCite Notes

    211 Infants
        211II Protection
            211k20 k. Criminal Prosecutions Under Laws for Protection of Children. Most Cited Cases

Medical evidence corroborating victim's testimony was not necessary to sustain defendant's conviction for predatory criminal sexual assault of child. S.H.A. 720 ILCS 5/12-14.1.


[3] KeyCite Notes

321 Rape
  321II Prosecution
    321II(B) Evidence
      321k50 Weight and Sufficiency
        321k51 In General
          321k51(1) k. In General. Most Cited Cases

Medical evidence is not required to sustain conviction for criminal sexual assault.

[4] KeyCite Notes

110 Criminal Law
  110XXIV Review
    110XXIV(M) Presumptions
      110k1144 Facts or Proceedings Not Shown by Record
        110k1144.13 Sufficiency of Evidence
          110k1144.13(2) Construction of Evidence
            110k1144.13(3) k. Construction in Favor of Government, State, or Prosecution. Most Cited Cases

110 Criminal Law KeyCite Notes
  110XXIV Review
    110XXIV(P) Verdicts
      110k1159 Conclusiveness of Verdict
        110k1159.2 Weight of Evidence in General
          110k1159.2(7) k. Reasonable Doubt. Most Cited Cases

When defendant on appeal challenges sufficiency of evidence to sustain his conviction, question for reviewing court is whether any rational trier of fact, viewing evidence in light most favorable to prosecutor, could have found essential elements of the crime proved beyond a reasonable doubt.

[5] KeyCite Notes

211 Infants
  211II Protection
    211k12 Constitutional and Statutory Provisions
      211k12(10) k. Retroactive Operation. Most Cited Cases
      (Formerly 211k12)

Legislation which reenacted statute creating offense of predatory criminal sexual assault of child could not apply retroactively to defendant's conduct occurring before such legislation's effective date and, thus, could not constitute mere "curative legislation" validating legislature's earlier action of enacting same statute, which was later declared unconstitutional. S.H.A. 720 ILCS 5/12-14.1.



[6] KeyCite Notes

110 Criminal Law
  110XXIV Review
    110XXIV(U) Determination and Disposition of Cause

110k1184 Modification or Correction of Judgment
 110k1184(2) k. Description of Offense. Most Cited Cases

 Where legislation creating offense of predatory criminal sexual assault of child had been declared unconstitutional, name of offense for which defendant was convicted would simply be changed from predatory criminal sexual assault of child to the preexisting offense of aggravated criminal sexual assault, as the two offenses possessed exactly the same elements and provided for exactly the same penalty. S.H.A. 720 ILCS 5/12-14.1(a)(1); 720 ILCS 5/12-14(b)(1) (1994 Bar Ed.).



[7] KeyCite Notes

 350H Sentencing and Punishment
  350HV Sufficiency and Construction of Sentence Imposed
   350HV(D) Credits
    350Hk1156 Prior Confinement
     350Hk1157 k. In General. Most Cited Cases
     (Formerly 110k1216.1(2))

 Defendant's sentencing credit of 312 days for time served was not to be applied against all four of his consecutive sentences.



[8] KeyCite Notes

 110 Criminal Law
  110XXIV Review
   110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
    110XXIV(E)1 In General
     110k1044 Motion Presenting Objection
      110k1044.1 In General; Necessity of Motion
       110k1044.1(1) k. In General. Most Cited Cases

 Defendant forfeited his claim that his sentencing credit for time served should have been applied to each of his consecutive sentences, where he did not file postsentencing motion. S.H.A. 730 ILCS 5/5-8-1(c). *Yes I did in PosT Conviction Petition of Relief!*

[9] KeyCite Notes

 350H Sentencing and Punishment
  350HI Punishment in General
   350HI(A) In General
    350Hk13 Retroactive Operation
     350Hk16 k. Particular Statutes. Most Cited Cases
     (Formerly 110k1206.3(2))

 Legislation which reenacted truth-in-sentencing provisions could not apply retroactively to defendant who committed the offenses he was convicted of prior to legislation's effective date. S.H.A. 730 ILCS 5/3-6-3.

**\*185 \*\*\*554 \*677** Daniel D. Yuhas, Deputy Defender, Lawrence J. Essig, Assistant Defender, Springfield, Office of the State Appellate Defender, for Robbie J. Moore.

Michael D. Clary, State's Attorney, Danville, Robert J. Biderman, Deputy Director, Springfield, State

Attorney Appellate Prosecutor, for People.

MODIFIED ON DENIAL OF REHEARING

Justice STEIGMANN delivered the opinion of the court:

In June 1996, the State charged defendant, Robbie J. Moore, with three counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b)(1) (West 1994)) and one count of aggravated criminal sexual *678 abuse (720 ILCS 5/12-16(d) (West 1994)). Subsequently, the trial court granted the State leave to amend the aggravated criminal sexual assault charges to three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1 (West 1996)). Defendant waived jury trial, and in January 1997, the court conducted a bench trial and found defendant guilty of all charges. In April 1997, the court sentenced defendant to 20 years in prison on each of the three counts of predatory criminal sexual assault of a child and 7 years in prison for aggravated criminal sexual abuse, with these sentences to be served consecutively. The court also awarded defendant 312 days' credit for time served prior to sentencing.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse; (2) his conviction should be reversed because the supreme court has declared unconstitutional the statute which created the offense of predatory criminal sexual assault of a child; (3) because the "truth-in-sentencing" legislation to which the trial court referred at the sentencing hearing violates the Illinois Constitution, this case must be remanded to clarify defendant's entitlement to day-for-day credit for time served; and (4) because defendant received consecutive terms of imprisonment for multiple convictions, he is entitled to multiple credit for time served in custody prior to sentencing. We affirm as modified and remand with directions.

I. BACKGROUND

At defendant's bench trial, the State's primary witnesses were the three juveniles who were the alleged victims of defendant's crimes.

Counts I and II alleged that between February 1, 1996, and June 10, 1996, defendant knowingly committed an act of sexual penetration with T.C., who was under 13 years of age when the acts were committed, in that defendant placed his penis in T.C.'s mouth.

At the time of the January 1997 bench trial, T.C. was 12 years old. He testified that he met defendant, whom he knew by the name of "Ratt," when Ratt and his girlfriend, Kimberly Harris, moved into the neighborhood. At first, Ratt was nice to T.C.'s brothers and the other 11- or 12-year-old children who hung around Ratt's trailer.

Ratt and Kim spoke to T.C. about what they called the "Inner Circle," which Ratt explained consisted of people who "had powers" and could control other people's minds. Ratt told T.C. he could become a member of the Inner Circle if he passed a test and paid Ratt $50 per month. T.C. "thought it would be cool" to become a member and told Ratt he wanted to join.

*679 On one occasion, because T.C.'s mother said that she would not permit him to spend the night away from home, T.C. pretended that he was going to run away but he actually stayed at Ratt's trailer. At some point during that evening when Ratt and T.C. were alone in one of the trailer's bedrooms, Ratt gave T.C. an envelope with a paper inside. T.C. read the paper that said he had to let Ratt "fondle me and other stuff like that." After T.C. read the paper, Ratt burned it. He also informed T.C. if he did not do what Ratt said, T.C. would die.

**186 ***555 Ratt then told T.C. to take his pants off, and T.C. complied, "because I wanted to be in the cult thing." Ratt then made T.C. suck Ratt's penis, and then Ratt sucked T.C.'s penis. T.C. testified that Ratt then "stuck his penis in my butt." T.C. said nothing during all of this because he

*[handwritten:]* "contridicted (in 2000 Trial)
I don't rember him doing it me in my ass"

"really wanted to be in the cult."

After Ratt told T.C. that Ratt was done, they went into the living room, and T.C. fell asleep. He left *what?* the trailer around 3 a.m. and returned home. T.C. did not tell anybody about this event until a few months later.

T.C.'s mother grounded him for a month for being out so late, but after that ended, T.C. returned to see Ratt at his trailer. Ratt told T.C. that no one else was present and that if T.C. did the same things again, T.C. would not have to pay $50 that month. Ratt had originally explained to T.C. that the $50 was for "materials and stuff" that Ratt was going to use to teach T.C. about the cult. T.C. testified he agreed, and Ratt made him suck Ratt's penis again, Ratt also sucked T.C.'s penis, and then Ratt again stuck his penis in T.C.'s anus. When Ratt was done, T.C. went home and told no one about the incident until about a month later.

Ratt had T.C. sign a piece of paper (which also contained other names) to signify that T.C. was in the cult. When T.C. testified, the prosecutor showed him a piece of paper bearing his signature and the names of Ratt and other children. T.C. identified the paper as the one he had signed.

According to T.C., A.C.'s mother found a bunch of books and notes that apparently caused her to contact the police regarding Ratt, A.C., and other children. That occurred about a month or so after the last incident involving T.C. and Ratt.

On cross-examination, T.C. at first said that it was painful when Ratt stuck his penis in T.C.'s anus, but he later explained that it was not "really painful because [Ratt] had some cream that I guess numbed it." T.C. claimed that he never had any blood in his underpants as a result of either of these incidents, and he never received any medical treatment. Although T.C. told some of his *680 friends about "what was going on with the Inner Circle," he never talked to them about how someone got into the Inner Circle.

Count III alleged that defendant committed predatory criminal sexual assault of a child between February 1, 1996, and June 10, 1996, because he knowingly committed an act of sexual penetration with J.G., who was under 13 years of age when the act was committed, in that defendant placed his finger in J.G.'s anus. At defendant's trial, J.G. testified that he was six years old. He had trouble remembering dates but testified that he met defendant, whom he also knew as Ratt, through his cousins. Along with other kids, he visited Ratt's trailer a few times.

During one of J.G.'s visits to Ratt's trailer with several of J.G.'s cousins, J.G. and Ratt were alone in the kitchen when the others left that room. J.G. testified that Ratt then "sticked his finger up my butt." Ratt first told J.G. to get on the ground and J.G. tried to run but Ratt grabbed him and J.G. could not. J.G. explained that he did not yell when Ratt put his finger in J.G.'s anus because Ratt said he would kill J.G. *In* ~~the~~ ~~1996~~ *(and to the investigators) he said it happend in the*
*Livingroom, The during the Trail he said it was the Kitchen, then in 2000 he said it was the front*
J.G. was wearing pants, but Ratt did not take the pants down. According to J.G., Ratt was able to *room (which*
put his finger up J.G.'s butt because J.G. had a hole in his pants. J.G. also explained that he had a *would have*
hole in his underwear as well. When Ratt released J.G., he ran home and told his father, who called *been a bed-*
the police. J.G. never went over to Ratt's trailer again because Ratt had hurt him. *room)*

Count IV alleged that defendant committed aggravated criminal sexual abuse in that between February 1, 1996, and June 10, 1996, he knowingly committed an act of sexual conduct with A.C., who was at least 13 years of age but under 17 years of age, in that defendant fondled her breasts and vagina. At the January 1997 bench trial, A.C. testified that she was 14 years old and had met Ratt the previous spring when he moved into the neighborhood. At first, Ratt and his live-in girlfriend, Kimberly Harris, were friendly to A.C. and the other neighborhood children who hung out at their trailer.

Ratt and Harris mentioned something to A.C. they called the Inner Circle, which Ratt **187 ***556 explained was "like something for people who believed in the devil." Ratt gave A.C. some notebooks and books to read that supposedly explained what the Inner Circle was about. Later, A.C.

signed a paper to signify her membership in the Inner Circle.

On one particular night, A.C. stayed over at Ratt's trailer, and only A.C., Harris, and Ratt were present. After A.C. put on her night clothes, she told Harris and Ratt that she had a headache and asked for an aspirin. They gave her a little white pill, but it did not have an *681 effect upon her like an aspirin. Instead, it made her "real drowsy in like the state I couldn't move and everything."

As A.C. lay on the bed wearing a T-shirt and a pair of shorts, she was in the process of falling asleep when Kim and Ratt came in to the trailer's bedroom in which A.C. was lying down. They started touching A.C. on her breasts and between her legs. Harris started first, touching between A.C.'s legs while Ratt "was messing with my breasts." She further explained that he "was squeezing them and stuff" with his hands underneath her shirt. A.C. told them to quit, but they did not listen to her. A.C. testified that at the time, she could barely move.

A.C. could not say how long Ratt and Harris continued this conduct, but after a while they stopped and told A.C. that if she said anything to anybody, Ratt was going to slit her throat.

After Ratt and Harris left the bedroom, A.C. fell asleep. The next morning, she awakened and got dressed, and they threatened her again by telling her that if she said anything to her parents, Ratt was going to slit her throat. When she later went home, she said nothing about these events because she was scared.

As best A.C. could recall, these events occurred in March 1996. T.C.'s mother and stepfather testified that, based upon when they "grounded" T.C. for staying out too late, the events at Ratt's trailer that T.C. testified about apparently occurred in March and early May 1996.

Defendant testified on his own behalf and denied committing any of the alleged offenses. On this evidence, the trial court found defendant guilty of all four charges.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of the three counts of predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Citing *People v. Garrett,* 281 Ill.App.3d 535, 544-45, 217 Ill.Dec. 337, 343, 667 N.E.2d 130, 136 (1996), defendant contends that to prove predatory criminal sexual assault of a child, the State needed to prove beyond a reasonable doubt the *intrusion* of any part of the body of one person into the sex organ of another; the mere touching of the victim's sex organ is not sufficient.

In response, the State concedes defendant's point that intrusion, not mere touching, is required to sustain his conviction, but the State contends that the evidence, when viewed as a whole, proved *how ?* intrusion beyond a reasonable doubt. The State points out that although *682 the six-year-old victim, J.G., testified that he was wearing clothes when defendant stuck his finger in J.G.'s anus, J.G. explained that both his pants and underpants had holes in them that allowed defendant to perform this act. Additionally, other deficiencies in J.G.'s testimony-such as his inability to recall dates and his confusion about where the incident occurred-are all matters which the trier of fact-here, the experienced trial judge-no doubt considered when deciding whether the State had proved these charges beyond a reasonable doubt. *Talking does NOT proove Penetration, nor does it proove the Defendant guilty beyound a reasonalbie doubt.*

[1]    The State also contends that A.C.'s testimony was sufficient to prove defendant guilty of aggravated criminal sexual abuse and that the State was not required to provide corroboration for her testimony. We agree. *What ?*

[2] [3]    In addition, defendant's claim that T.C. cannot be believed because of the lack of medically corroborating evidence is not persuasive. First, no such evidence could be expected regarding T.C.'s claim that defendant forced him to engage in oral sex. Second,**188 ***557 given T.C.'s testimony that at least a month passed from the last incident until the police were contacted, we doubt that any medical evidence could then be forthcoming to corroborate T.C.'s claim regarding anal sex. Last, medical evidence is not required to sustain a conviction for criminal sexual assault. *People v. Fryer,* 247 Ill.App.3d 1051, 1058, 187 Ill.Dec. 786, 791, 618 N.E.2d 377, 382 (1993).

[4]    When a defendant on appeal challenges the sufficiency of the evidence to sustain his conviction, the question for the reviewing court is whether *any* rational trier of fact, viewing the evidence in the light most favorable to the prosecutor, could have found the essential elements of the crime proved beyond a reasonable doubt. *People v. Brown,* 169 Ill.2d 132, 152, 214 Ill.Dec. 433, 442, 661 N.E.2d 287, 296 (1996). Viewing the evidence in the record before us in accordance with this standard, we conclude that the trial court, acting as the trier of fact in this case, could have found the essential elements of the crimes of which defendant was convicted proved beyond a reasonable doubt.

B. Defendant's Claim That His Conviction Should Be Reversed Because the Supreme Court Has Declared Unconstitutional the Statute Which Created the Offense of Predatory Criminal Sexual Assault of a Child

[5]    Defendant next argues that his conviction of three counts of predatory criminal sexual assault of a child under section 12-14.1 of the Criminal Code of 1961 (Code) (720 ILCS 5/12-14.1 (West 1996)) must be reversed because the statute which created that offense, Public Act 89-428 (Pub. Act 89-428, § 260, eff. December 13, 1995 *683 (1995 Ill. Laws 4453, 4506)), has been declared unconstitutional. Defendant correctly points out that the Supreme Court of Illinois in *Johnson v. Edgar,* 176 Ill.2d 499, 518, 224 Ill.Dec. 1, 10, 680 N.E.2d 1372, 1381 (1997), concluded that Public Act 89-428 was unconstitutional in its entirety because it violated the single subject rule of the Illinois Constitution.

Defendant further argues that the effect of the supreme court's decision in *Johnson* is to leave the law in force as it existed prior to the adoption of the unconstitutional statute. In other words, because Public Act 89-428 is unconstitutional, the statute it created is void *ab initio. People v. Gersch,* 135 Ill.2d 384, 390, 142 Ill.Dec. 767, 769, 553 N.E.2d 281, 283 (1990). Defendant claims that because the Code prior to the enactment of Public Act 89-428 contained no such offense of predatory criminal sexual assault of a child, his conviction of that offense is void and must be reversed.

Defendant concedes that Public Act 89-462 (Pub. Act 89-462, § 260, eff. May 29, 1996 (1996 Ill. Laws 588, 642)) in effect reenacted section 12-14.1 of the Code, to again place the offense of predatory criminal sexual assault of a child in the Code, but he asserts that this later enactment does not apply to his case. 720 ILCS 5/12-14.1 (West 1996). Although Public Act 89-462 became effective on May 29, 1996, the charges in this case alleged that defendant committed the offense of predatory criminal sexual assault between February 1, 1996, and June 10, 1996, and defendant contends that the record indicates that the incidents in question likely occurred around or during spring 1996, before the effective date of Public Act 89-462 of May 29, 1996. We agree. Thus, defendant contends that to apply the later-enacted Public Act 89-462 to his conduct in this case would violate the *ex post facto* clauses of the United States and Illinois Constitutions. U.S. Const., art. I, §§ 9, 10; Ill. Const.1970, art. I, § 16.

The State responds that this court should uphold defendant's conviction because (1) Public Act 89-462, which reenacted the offense of predatory criminal sexual assault of a child, constituted "curative legislation" that validated the legislature's earlier action of enacting section 12-14.1 of the Code as

part of Public Act 89-428; and (2) this court can simply change the name of the offense of which defendant was convicted from predatory criminal sexual assault of a child to aggravated criminal sexual assault because the nature and elements of these two offenses are identical, and the name and statutory designation of the offenses constitute a mere formality. We disagree with the State's first argument but agree with its second.

**\*\*189 \*\*\*558** Responding to the State's first argument, we note that the State cites no authority involving a situation like the present case, involving *\*684* the creation of a substantive criminal statute. All of the State's cases concern *procedural* issues and are thus totally inapposite. This distinction is critical because a substantive criminal statute defining criminal conduct must be "on the books" before the State may interfere with a person's liberty because he engaged in that conduct. No amount of "curative legislation" can be permitted to contravene this most fundamental of our American legal traditions.

[6]    We find the State's second argument persuasive because of the unique statutory history of (1) section 12-14.1 of the Code (720 ILCS 5/12-14.1 (West 1996)), defining predatory criminal sexual assault of a child, and (2) section 12-14 of the Code (720 ILCS 5/12-14 (West 1994)), defining the offense of aggravated criminal sexual assault before the enactment of Public Act 89-428. Public Act 89-428 not only created the offense of predatory criminal sexual assault of a child, but it also amended section 12-14 of the Code, which defined aggravated criminal sexual assault, to delete from that definition certain conduct which in turn became part of the definition of predatory criminal sexual assault of a child. Pub. Act 89-428, § 260, eff. December 13, 1995 (1995 Ill. Laws 4453, 4505-06). Specifically, prior to the enactment of Public Act 89-428, section 12-14(b)(1) of the Code read as follows:

"(b) The accused commits aggravated criminal sexual assault if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12-14(b)(1) (West 1994).

Section 12-14(d) of the Code provided that a conviction of aggravated criminal sexual assault is a Class X felony (720 ILCS 5/12-14(d)(West 1994)).

Section 260 of Public Act 89-428 not only added section 12-14.1 to the Code, but also deleted the above language from the definition of aggravated criminal sexual assault. Pub. Act 89-428, § 260, eff. December 13, 1995 (1995 Ill. Laws 4505-06). The legislature instead chose to include that conduct within section 12-14.1(a)(1), defining predatory criminal sexual assault of a child, which reads as follows:

"(a) The accused commits predatory criminal sexual assault of a child if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12-14.1(a)(1) (West 1996).

Section 12-14.1(b) of the Code provided that a person who committed *\*685* predatory criminal sexual assault of a child as defined in subsection (a)(1) commits a Class X felony (720 ILCS 5/12-14.1(b) (West 1996)).

The new offense of predatory criminal sexual assault of a child, as defined in section 12-14.1 of the Code, also contained a provision that required a sentence of not less than 50 years in prison for a person who committed the conduct described in subsection (a)(1), and who caused great bodily harm to the victim that either resulted in permanent disability or was life threatening. 720 ILCS 5/12-14.1 (a)(2), (b) (West 1996). However, because neither of these aggravating circumstances is present in this case, defendant was convicted of a "standard" Class X felony.

A comparison of section 12-14(b)(1) of the Code (720 ILCS 5/12-14(b)(1) (West 1994)), defining aggravated criminal sexual assault before it was amended by Public Act 89-428, and section 12-14.1 (a)(1) (720 ILCS 5/12-14.1(a)(1) (West 1996)), defining predatory criminal sexual assault of a child, as added by Public Act 89-428, reveals that these two offenses possess *exactly* the same elements and provide for *exactly* the same penalty.

We earlier noted defendant's argument that because Public Act 89-428 is unconstitutional in its entirety, the effect of the supreme court's decision in *Johnson* is to leave the law in force as it existed prior to the adoption of the unconstitutional statute. Because we agree with that argument, we conclude that just as Public Act 89-428 failed to establish the new offense of predatory criminal sexual assault of a child, it *equally* failed to amend section 12-14 of the Code by deleting therefrom a definition of aggravated **\*190 \*\*\*559** criminal sexual assault which described the *conduct* of which defendant was convicted in this case.

To phrase the matter another way, this court's focus should be on the conduct defendant was convicted of engaging in- *by whatever name*-and not on either the section number of the statute or its name that the parties may have believed described that conduct. We find support for this conclusion by noting that defendant, when accused of committing predatory criminal sexual assault of a child because-the State alleged-he was 17 years of age and committed an act of sexual penetration with victims under 13 years of age when the act was committed, would prepare to meet the State's allegations as set forth in the charges. The *precise name* of the charges is of little moment. Accordingly, we find no prejudice to defendant in our granting the State's request to change the designation of his convictions from three counts of predatory criminal sexual assault of a child under section 12-14.1(a)(1) of the Code (720 ILCS 5/12-14.1(a)(1)**\*686** (West 1996)) to three counts of aggravated criminal sexual assault under section 12-14(b)(1) of the Code (720 ILCS 5/12-14(b)(1) (West 1994)). Further, our granting the State's request to amend the trial court's judgment and sentencing order does not affect defendant's sentences because both crimes are Class X felonies.

Accordingly, under the powers this court possesses pursuant to Supreme Court Rule 366(a)(5) (155 Ill.2d R. 366(a)(5)), we order on remand that the trial court's judgment and sentencing order be amended to reflect that defendant stands convicted of three counts of aggravated criminal sexual assault, not predatory criminal sexual assault of a child.

### C. Credit Against the Sentence

[7] Defendant also argues that the trial court erred by failing to apply sentencing credit of 312 days against all four of his consecutive sentences. Specifically, he contends that the supreme court's decision in *People v. Robinson*, 172 Ill.2d 452, 459, 463, 217 Ill.Dec. 729, 732, 734, 667 N.E.2d 1305, 1308, 1310 (1996), required the court to apply defendant's credit to all four sentences. We disagree.

[8] First, we note that defendant has forfeited this issue by failing to file a postsentencing motion, as required by section 5-8-1(c) of the Unified Code of Corrections (Unified Code), if he wishes to challenge some aspect of his sentence on appeal. 730 ILCS 5/5-8-1 (c) (West 1996); see *People v. Reed*, 177 Ill.2d 389, 393-95, 226 Ill.Dec. 801, 803-04, 686 N.E.2d 584, 586-87 (1997).

However, even if we did not find forfeiture present, we note that in *Feazell v. Washington*, 291 Ill.App.3d 766, 768, 226 Ill.Dec. 56, 57, 684 N.E.2d 1052, 1053 (1997), this court held that *Robinson* does not apply when a defendant is subject to consecutive sentences, as is defendant here. We decline defendant's request to reconsider our decision in *Feazell.*

### D. Truth-In-Sentencing

[9] Last, defendant argues that the trial court erred by applying the truth-in-sentencing provisions of section 3-6-3 of the Unified Code (730 ILCS 5/3-6-3 (West Supp.1995)) to his sentence. Specifically, he contends that the truth-in-sentencing provisions of the Unified Code-which bar him from receiving credit for good conduct-violate the single subject rule of the Illinois Constitution (Ill. Const.1970, art. IV, § 8(d)). We agree.

This court recently addressed the same issue in *People v. Pitts,* 295 Ill.App.3d 182, 190, 229 Ill.Dec. 451, 456, 691 N.E.2d 1174, 1179 (1998), where we held that Public Act 89-404 (Pub. Act 89-404, eff. August 20, 1995 (1995 Ill. Laws 4306)) violates the single subject rule and is therefore invalid. Accordingly, section 3-6-3 of the Unified Code (730 ILCS 5/3-6-3 (West 1994)), *687 as it existed before Public Act 89-404 (Pub. Act 89-404, § 40, eff. August 20, 1995 (1995 Ill. Laws 4323-26)), applies to defendant, and he is eligible for day-for-day good-time credit.

We note that the State argues that if we were to find Public Act 89-404 unconstitutional, then we can still affirm the application of the truth-in-sentencing provisions of section 3-6-3 of the Unified Code to defendant's sentence because the legislature reenacted that section in Public Act 89-462, effective May 29, 1996 (Pub. Act 89-462, § 280, eff. May 29, 1996 (1996 Ill. Laws 588, 655-56)). **191 ***560 We disagree because, as discussed previously, the record shows that defendant committed the offenses he was convicted of during spring 1996, before the effective date of Public Act 89-462.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with directions that the court amend (1) the judgment and sentencing order to reflect that defendant stands convicted of three counts of aggravated criminal sexual assault, not predatory criminal sexual assault of a child, and (2) the sentencing order to reflect that defendant is eligible for day-for-day good-time credit as provided in section 3-6-3 of the Unified Code prior to any "truth-in-sentencing" amendments added thereto.

Affirmed as modified and remanded with directions.


GARMAN, P.J., and KNECHT, J., concur.


Ill.App. 4 Dist.,1998.
**People** v. Moore
295 Ill.App.3d 676, 694 N.E.2d 184, 230 Ill.Dec. 553

END OF DOCUMENT

QUICK PRINT   PRINT   EMAIL   DOWNLOAD   FAX   SAVE   MANAGE

**People v. Tellez-Valencia**
188 Ill.2d 523, 723 N.E.2d 223
Ill.,1999.
November 18, 1999 (Approx. 7 pages)

188 Ill.2d 523, 723 N.E.2d 223, 243 Ill.Dec. 191

Briefs and Other Related Documents

Supreme Court of Illinois.
The PEOPLE of the State of Illinois, Appellant,
v.
Gomecindo TELLEZ-VALENCIA, Appellee.
The People of the State of Illinois, Appellee,
v.
Robbie J. Moore, Appellant.
Nos. 85524, 85532.
Nov. 18, 1999.
Rehearing Denied Jan. 31, 2000.

Defendant was convicted in the Circuit Court, Lake County, Raymond J. McKoski, J., of two counts of predatory criminal sexual assault of a child. Defendant filed motion for summary reversal after legislative enactment creating offense was held unconstitutional under single subject rule of State Constitution. The Appellate Court, 295 Ill.App.3d 122, 229 Ill.Dec. 634, 692 N.E.2d 407, reversed. In separate case, defendant was convicted in the Circuit Court, Vermilion County, Thomas J. Fahey, J., of three counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse. Defendant appealed, and the Appellate Court, 295 Ill.App.3d 676, 230 Ill.Dec. 553, 694 N.E.2d 184, affirmed, and held that offense for which defendant was convicted would be changed from predatory criminal sexual assault of child to preexisting offense of aggravated criminal sexual assault. Appeals were taken, and cases were consolidated. The Supreme Court, Heiple, J., held that: (1) determination that statute was unconstitutional rendered offense void ab initio, and required vacatur of convictions, and (2) State could not amend charging instruments on appeal.

Affirmed in part and reversed in part.

Rathje, J., dissented and filed opinion.


West Headnotes


[1] KeyCite Notes

    37 Assault and Battery
      37II Criminal Responsibility
        37II(A) Offenses
          37k47 Nature and Elements of Criminal Assault
            37k48 k. In General. Most Cited Cases

Determination by Supreme Court that legislative enactment through which offense of predatory criminal sexual assault was created was unconstitutional, based on violation of single subject rule of State Constitution, rendered offense void ab initio, and required vacatur of convictions obtained under statute.


[2] KeyCite Notes

    210 Indictment and Information
      210XI Amendment

210k158 Indictment
   210k159 In General
      210k159(1) k. In General. Most Cited Cases

When a defendant is convicted of an offense later held unconstitutional, State may not amend the charging instrument on appeal. S.H.A. 725 ILCS 5/111-5.

[3] KeyCite Notes 

210 Indictment and Information
   210XI Amendment
      210k162 k. Complaint or Affidavit. Most Cited Cases

State could not amend instruments charging defendants with offense of predatory criminal sexual assault on appeal following defendants' convictions, where during pendency of which enactment creating offense had been held unconstitutional as violative of single subject rule, and offense was thus rendered void ab initio; proposed amendments sought to cure a substantive defect and were not a mere formality, as crime charged had been rendered nonexistent at time defendants had committed charged acts. S.H.A. 725 ILCS 5/111-5.

[4] KeyCite Notes 

210 Indictment and Information
   210XI Amendment
      210k162 k. Complaint or Affidavit. Most Cited Cases

Formal defects in a charging instrument may be amended by the State at any time. S.H.A. 725 ILCS 5/111-5.

[5] KeyCite Notes

110 Criminal Law
   110XXIV Review
      110XXIV(U) Determination and Disposition of Cause
         110k1185 Reversal
            110k1186.3 k. Defects in Indictment or Information. Most Cited Cases

210 Indictment and Information KeyCite Notes
   210V Requisites and Sufficiency of Accusation
      210k56 k. Constitutional Requirements as to Accusation. Most Cited Cases

Defect caused by charging an offense based upon a statute not in effect when the alleged offense occurred is fatal, rendering the entire instrument invalid, and warranting reversal of conviction for offense.

**224 *524 ***192 Richard S. London, Staff Atty., State's Atty. Appellate Prosecutor, Elgin, Lisa Anne Hoffman, Asst. Atty. Gen., Chicago, State's Attorney Lake County, for the People in No. 85524.

Barbara R. Paschen, Asst. State Appellate Defender, Elgin, for Gomecindo Tellez-Valencia in No. 85524.

Lawrence J. Essig, Asst. State Appellate Defender, Springfield, for Robbie J. Moore in No. 85532.

Lisa Anne Hoffman, Asst. Atty. Gen., Chicago, State's Atty. Vermilion County, Danville, State's Attys. App. Pros., Springfield, for the People in No. 85532.

Justice HEIPLE delivered the opinion of the court:
    Both defendants in this consolidated appeal were convicted of predatory criminal sexual assault of a child. While defendants' respective appeals were pending, this court invalidated Public Act 89-428, which created this offense. Subsequently, in case No. 85524, the appellate court reversed defendant Gomecindo Tellez-Valencia's conviction, holding that the State could not amend the charging instrument on appeal. 295 Ill.App.3d 122, 229 Ill.Dec. 634, 692 N.E.2d 407. However, the appellate court in No. 85532 affirmed defendant *525 Robbie J. Moore's conviction, allowing the State to amend the charge on appeal to aggravated criminal sexual assault. 295 Ill.App.3d 676, 230 Ill.Dec. 553, 694 N.E.2d 184. We consolidated the two cases, and now hold that, when a defendant is convicted of an offense later held unconstitutional, the State may not amend the charging instrument on appeal.

## BACKGROUND

    Defendants were both charged with and convicted of predatory criminal sexual assault of a child for acts committed in the spring of 1996. Subsequent to defendants' convictions, and while their appeals were **225 ***193 pending, this court held that Public Act 89-428 was enacted in violation of the single subject rule (Ill. Const.1970, art. IV, § 8) and declared the Act unconstitutional in its entirety. *Johnson v. Edgar,* 176 Ill.2d 499, 224 Ill.Dec. 1, 680 N.E.2d 1372 (1997). Shortly thereafter, the General Assembly passed Public Act 89-462, reenacting the offense of predatory criminal sexual assault of a child. Public Act 89-462 did not become effective, however, until May 29, 1996, and by its language, does not apply to offenses occurring before that date.

    On appeal, both defendants argued that their convictions were invalid because they were based upon charging instruments that failed to state an offense. The Second District of the Appellate Court reversed the conviction of defendant Tellez-Valencia, holding that only the grand jury could make a substantive change to the defendant's indictment. 295 Ill.App.3d at 127, 229 Ill.Dec. 634, 692 N.E.2d 407. The Fourth District of the Appellate Court, however, reached the opposite result in defendant Moore's case, holding that the State could amend the trial court's judgment and sentencing order to change the name of the offense of which defendant was convicted from predatory criminal sexual assault of a child to aggravated criminal sexual assault, thereby effectively amending defendant's indictment on appeal. In so holding, the court in *Moore* noted the identical nature and elements of the two offenses, and reasoned that such an amendment constituted a *526 mere formality, thus affirming the conviction. 295 Ill.App.3d at 683-84, 230 Ill.Dec. 553, 694 N.E.2d 184. We granted leave to appeal in order to resolve this conflict in the appellate court.

## ANALYSIS

    [1]    When Public Act 89-428 was held unconstitutional by this court's ruling in *Johnson v. Edgar,* 176 Ill.2d 499, 224 Ill.Dec. 1, 680 N.E.2d 1372 (1997), the offense of predatory criminal sexual assault of a child was rendered void *ab initio;* that is, it was as if the law never existed. See *People v. Gersch,* 135 Ill.2d 384, 390, 142 Ill.Dec. 767, 553 N.E.2d 281 (1990). Although the General Assembly later reenacted the offense, this reenactment had the effect of creating an entirely new criminal statute. Each defendant's charging instrument thus failed to state an offense because the statute under which each was charged and prosecuted was not in effect when the alleged offenses occurred. Accordingly, defendants' convictions for predatory criminal sexual assault of a child cannot stand.

[2] [3]    The State argues that amendment of defendants' charging instruments on appeal to change the name of the offense charged from predatory criminal sexual assault of a child to aggravated criminal sexual assault is merely a formality because the elements of the two crimes, as well as the statutory language and penalties as applied to defendants, are identical. The State reasons that defendants are not prejudiced in any way by such an amendment because each was apprised of the nature and elements from which to prepare a defense, regardless of the specific name given to the alleged criminal act.

[4] [5]    While we acknowledge that formal defects in a charging instrument may be amended by the State at any time (see 725 ILCS 5/111-5 (West 1998)), we disagree with the State's characterization of the proposed amendment in the cases at bar as a mere formality. The committee comments to section 111-5 of the Code of Criminal Procedure of 1963 specifically exclude failure to charge a crime from those defects in a charge considered merely *527 formal and which may be cured by amendment at any time, instead labeling this a substantive defect. See 725 ILCS 5/111-5, Committee Comments-1963 (Smith-Hurd 1992). Further, the defect caused by charging an offense based upon a statute not in effect when the alleged offense occurred is fatal, rendering the entire instrument invalid, and warranting reversal of **226 ***194 defendants' convictions. See *People v. Wasson,* 175 Ill.App.3d 851, 854, 855, 125 Ill.Dec. 369, 530 N.E.2d 527 (1988).

*People v. Ryan,* 117 Ill.2d 28, 109 Ill.Dec. 162, 509 N.E.2d 1001 (1987), upon which the dissent places great weight, is distinguishable and has no application to the case at bar. In *Ryan,* the defendants were charged with unlawful possession of a weapon by a felon for acts committed in December 1985 and January 1986. *Ryan,* 117 Ill.2d at 30-31, 109 Ill.Dec. 162, 509 N.E.2d 1001. The defendants' charging instruments, however, incorrectly cited to "Illinois Revised Statutes, 1983," although the statute which created the offense did not take effect until July 1984. *Ryan,* 117 Ill.2d at 37, 109 Ill.Dec. 162, 509 N.E.2d 1001. This court held that citation to the wrong edition of the Illinois Revised Statutes on defendants' charging instruments was not a fatal defect and reversed the trial court's ruling that the informations failed to state an offense. *Ryan,* 117 Ill.2d at 37, 109 Ill.Dec. 162, 509 N.E.2d 1001.

Unlike the present case, however, the defendants in *Ryan* were charged with an offense that was in existence before, during and after the time the defendants committed their crimes. The offense of predatory criminal sexual assault of a child, by contrast, was rendered nonexistent at the time defendants Moore and Tellez-Valencia committed the acts for which they were convicted. Thus, contrary to the dissent's contention, what occurred in the case at bar was more than just an error in citation on the defendants' charging instruments, as was the case in *Ryan;* both of the instant defendants were charged with and convicted of a nonexistent offense.

The amendment sought by the State to each defendant's *528 charging instrument is to cure a substantive, not a formal, defect. Accordingly, these amendments may not be made on appeal. The charging instrument in each case is therefore invalid, and each defendant's conviction must be reversed.

CONCLUSION

For the above reasons, we affirm the judgment of the appellate court in cause No. 85524 and reverse the judgments of the appellate and circuit courts in cause No. 85532.

*No. 85524-Affirmed.*

*No. 85532-Judgments reversed.*

Justice RATHJE, dissenting:

Although I am compelled to dissent in this case, my colleagues and I in fact disagree on very little. We agree, for example, that the statutory language defining the offense at issue was in effect when the defendants allegedly committed the offense. Likewise, we agree that, as a consequence of this court's decision in *Johnson v. Edgar,* 176 Ill.2d 499, 224 Ill.Dec. 1, 680 N.E.2d 1372 (1997), the offense at issue remained a part of the aggravated criminal sexual assault statute.

The only source of contention is the remedy. The defendants were charged with conduct that was unquestionably a crime when committed and has remained a crime ever since. The fact that the charging instruments misnamed the offense is therefore a formal defect that the State should be permitted to amend. Apparently fearing a constitutional deprivation, my colleagues issue an opinion that will result in new trials at which the defendants will be charged with the exact same conduct set forth in the original charging instruments. I believe the majority's approach is both unwarranted and a clear departure from established precedent.

The majority reaches the wrong result because of two faulty premises in its analysis. According to my colleagues, *\*529* these cases involve (1) an offense held unconstitutional, and (2) charging instruments that fail to state offenses. One of these propositions is misleading; the other is simply incorrect. Once these cases are viewed under the correct factual and legal framework,*\*\*227 \*\*\*195* the error of the majority's conclusion becomes obvious.

## CONSTITUTIONALITY

The majority begins by stating that these consolidated cases involve defendants who have been "convicted of an offense later held unconstitutional." This statement gives new meaning to the phrase "legal fiction." The statutory language relevant to these appeals is the following:

"[T]he accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed."

For the purposes of this dissent, I will refer to this language as "the offense." At all relevant times in these cases, the offense was part of the Illinois Compiled Statutes.

The offense originally appeared in section 12-14(b)(1) of the Criminal Code of 1961 (720 ILCS 5/12-14(b)(1) (West 1994)) and was one of several different ways in which a person could commit aggravated criminal sexual assault. Public Act 89-428 moved the offense from the aggravated criminal sexual assault statute and designated it the separate offense of predatory criminal sexual assault of a child. The offense was then given the new statutory section number 12-14.1(a)(1) (720 ILCS 5/12-14.1(a)(1) (West 1996)). In other words, Public Act 89-428 merely moved the relevant statutory paragraph one section over and gave it a new title and number.[FN1] The legislature was not creating a new offense; it was *\*530* merely giving an old offense a new name. When this court invalidated Public Act 89-428 on single subject grounds, the law was restored to its previous state. Thus, the offense was always part of the aggravated criminal sexual assault statute.

FN1. Public Act 89-428 also added an additional type of predatory criminal sexual assault that involves situations in which the accused causes the victim great bodily harm. See 720 ILCS 5/12-14.1(a)(2) (West 1996). All parties agree that this paragraph is not involved in these cases and that the defendants were charged under paragraph (a)(1).

The offense has not been held unconstitutional. There is nothing unconstitutional about forbidding persons over 17 years of age from committing acts of sexual penetration with persons under 13 years of age. When the majority states that the offense was held unconstitutional, what the majority really means to say is that the Public Act changing the title of the offense was passed in violation of the single subject clause of the Illinois Constitution.

## AMENDMENT OF THE CHARGING INSTRUMENTS

The majority exalts form over substance in holding the defects in the charging instruments to be substantive rather than formal. The majority's entire analysis of this issue is the simple assertion that failure to charge an offense is a substantive defect. I have no quarrel with this assertion, except that it does not apply to these cases.

The majority opinion contains a significant glaring omission: any analysis of the law that pertains to defects in indictments, specifically which types of defects are substantive and which are formal. In fact, it would be impossible for the majority to discuss the applicable law and reach the conclusion it reaches.

The policy of the courts is to disregard mere technical objections to a charge and to require only that the charging instrument state the essential elements of the offense. *People v. Cazares,* 86 Ill.App.3d 612, 615, 41 Ill.Dec. 836, 408 N.E.2d 258 (1980). Charging instruments may be amended at any time to correct formal defects; a formal defect is one that does *\*531* not alter the nature and elements of the charged offense. *People v. Patterson,* 267 Ill.App.3d 933, 938, 205 Ill.Dec. 1, 642 N.E.2d 866 (1993).

*\*\*228 \*\*\*196* The rule is well established in Illinois that an incorrect statutory citation in a charging instrument is a formal defect when the defendant suffers no prejudice. See, *e.g., Ryan,* 117 Ill.2d at 36-37, 109 Ill.Dec. 162, 509 N.E.2d 1001 (error in informations citing statute that did not exist was not fatal because defendants suffered no prejudice); *People v. Dunskus,* 282 Ill.App.3d 912, 917, 218 Ill.Dec. 306, 668 N.E.2d 1138 (1996) ( "An error in the citation of the statute giving rise to the charge is merely a formal defect that is subject to amendment"); *People v. Melton,* 282 Ill.App.3d 408, 415, 217 Ill.Dec. 795, 667 N.E.2d 1371 (1996) ("Although the statute cited in the charging documents was no longer in effect, the criminal offense of child endangerment was still embodied in the Criminal Code. Accordingly, defendants' claim that they were convicted of a nonexistent crime is without merit"); *People v. Witt,* 227 Ill.App.3d 936, 944, 169 Ill.Dec. 915, 592 N.E.2d 402 (1992) ("Where the language of the indictment sufficiently informs a defendant of the charges against him, and defendant cannot demonstrate any prejudice resulting from an incorrect statutory citation, the defect is formal and does not warrant reversal"); *People v. Harris,* 205 Ill.App.3d 873, 875-76, 150 Ill.Dec. 747, 563 N.E.2d 874 (1990) (because the language of the charge was not altered, there was no error when the State was permitted to amend the complaint to change the statutory section); *People v. House,* 202 Ill.App.3d 893, 904-05, 148 Ill.Dec. 627, 560 N.E.2d 1224 (1990) ("An error in the citation of a statutory provision is a formal rather than substantive defect, when the amendment does not affect the substance of the charge"); *People v. Boyd,* 87 Ill.App.3d 978, 982, 42 Ill.Dec. 777, 409 N.E.2d 392 (1980) ("a formal defect, such as an incorrect citation of the criminal statute violated, does not require or warrant reversal of a conviction unless the defendant was prejudiced by the miscitation").

As the majority correctly notes, the failure of a charging instrument to state an offense is a substantive defect. *\*532* The failure to state an offense means that the charging instrument left out some crucial element so that the allegations do not state a crime. For instance, in *People v. Johnson,* 43 Ill.App.3d 559, 2 Ill.Dec. 427, 357 N.E.2d 594 (1976), an indictment charged the defendant with unlawful use of weapons in violation of section 24-1(a)(10) of the Criminal Code of 1961 (Ill.Rev.Stat.1975, ch. 38, par. 24-1(a)(10)). That section made it a crime to carry a loaded weapon, but the indictment left out the word "loaded." Therefore, the court held that the indictment contained a substantive defect because it did not state an offense. *Johnson,* 43 Ill.App.3d at 561, 2 Ill.Dec. 427, 357 N.E.2d 594. See also, *e.g., People v. Tucker,* 131 Ill.App.2d 598, 599, 268 N.E.2d 191 (1971) (complaint for driving under the influence of intoxicating liquor was defective for leaving out the phrase "of intoxicating liquor;" the State could not amend indictment because it failed to state an offense).

The question that must be asked is which of these principles applies to this case. Did the charging instruments fail to state offenses or did they contain incorrect statutory citations? The charging instruments alleged that the defendants were over 17 years of age and committed acts of sexual penetration with victims under 13 years of age. These charging instruments properly charged the defendants with the offense. The effect of this court's decision in *Johnson* is that the offense was

always part of the aggravated criminal sexual assault statute, and therefore the charging instruments should have used the term "aggravated criminal sexual assault" rather than "predatory criminal sexual assault of a child." Although the charging instruments properly stated offenses, the State, through no fault of its own, cited the wrong statute. I ask my colleagues in the majority to open their 1994 statute books, read section 12-14(b)(1) of the Criminal Code of 1961, and explain to me how these charging instruments did not state offenses.**229 *533 ***197 As stated previously, at all relevant times in these cases it was a Class X felony for a person over 17 years of age to commit an act of sexual penetration with a victim under 13 years of age. The only question there has ever been is whether section 12-14(b)(1) and the title "aggravated criminal sexual assault" or section 12-14.1(a)(1) and the title "predatory criminal sexual assault of a child" is the correct citation.

In *People v. Ryan,* 117 Ill.2d 28, 109 Ill.Dec. 162, 509 N.E.2d 1001 (1987), the State charged the defendants with unlawful use of weapons by a felon, but cited a statutory compilation that did not contain that offense. The trial judge ruled that the informations did not state offenses. This court reversed, holding that the citations were not so misleading that the defendants could have been prejudiced by them. Writing for a unanimous court, Justice Miller explained that, although the State cited a statutory compilation that predated the existence of the offense, the defendants were given fair notice of the nature and elements of the charges against them. Because the defendants suffered no prejudice, the citation to a nonexistent statute was not fatal. *Ryan,* 117 Ill.2d at 36-37, 109 Ill.Dec. 162, 509 N.E.2d 1001.

Allowing the majority opinion and *Ryan* to co-exist violates our obligation to provide the lower courts with clarity of decision. The rule now established is as follows: If the State carelessly and mistakenly cites a statute that does not exist, the defect is formal and does not warrant reversal ( *Ryan* ); if the State through no fault of its own cites a statute that does not exist, the defect is substantive and requires reversal ( *Tellez-Valencia* ). We are doing a true disservice to the lower courts by expecting them to reconcile these two decisions.

The majority argues that *Ryan* is distinguishable. I agree. In *Ryan,* if the defendants or their attorneys would have looked up the statute the State cited in the charging instruments, they would have found no such statute. *534 Thus, a question existed whether the defendants were given fair warning of the charges against them. By contrast, if defendants Tellez-Valencia and Moore or their attorneys had checked the statute cited in their charging instruments, they would have learned that they were charged with Class X felonies for being over 17 and committing acts of sexual penetration with victims under the age of 13. Thus, the distinction between the two cases is that the defendants in *Ryan* were at least arguably subjected to potential prejudice, yet this court still found the defects to be formal, while the defendants in the cases now before this court suffered no prejudice, yet this court holds that the defects are substantive. The majority's statement that the defendants in this case, unlike the defendants in *Ryan,* were charged with an offense that did not exist is simply untrue. At the time defendants were accused of sodomizing children, the exact statutory language the State cited in the charging instruments was in effect in section 12-14(b) (1) of the Criminal Code of 1961 (720 ILCS 5/12-14(b)(1) (West 1994)).

The majority relies solely on an appellate court decision, *People v. Wasson,* 175 Ill.App.3d 851, 854-55, 125 Ill.Dec. 369, 530 N.E.2d 527 (1988), in which the court held that charging the new aggravated criminal assault statute rather than the old aggravated indecent liberties with a child statute was a substantive defect. Assuming *arguendo* that *Wasson* was correctly decided, it is distinguishable because, as the court clearly explained, the law governing sex offenses was substantively changed by the enactment of the criminal sexual assault and abuse law of 1984. *Wasson,* 175 Ill.App.3d at 854, 125 Ill.Dec. 369, 530 N.E.2d 527. The State sought to substitute one statute for another that was not the same. Aggravated indecent liberties with a child was committed when a person over the age of 17 committed an act of sexual intercourse with a child under the age of 12 (Ill.Rev.Stat.1983, ch. 38, par. 11-4.1(a)(1)(A)), while aggravated *535 criminal **230 ***198 sexual assault was committed when a person over the age of 17 committed an act of sexual penetration with a person under the age of 13 (Ill.Rev.Stat., 1984 Supp., ch. 38, par. 12-14(b)(1)). By contrast, the change from aggravated criminal sexual assault to predatory criminal sexual assault of a child was merely a change in statutory titles and section numbers. Unlike the statutes at issue in

*Wasson,* the *exact same language* defined both offenses.

Interestingly, the charging instrument in *Moore* has already been amended once to reflect the change in the law. The State filed an information charging defendant Moore with committing aggravated criminal sexual assault. When the State determined that the name of the offense had been changed to "predatory criminal sexual assault of a child," the trial court allowed the State to amend the information to charge the new title and section number. The majority does not address whether this first amendment was also improper.

The defendants in these cases were given fair warning of the charges against them. The defects in the charging instruments were formal because they did not alter the nature and elements of the charged offense. *Patterson,* 267 Ill.App.3d at 938, 205 Ill.Dec. 1, 642 N.E.2d 866. The defendants would suffer no prejudice by allowing the State to amend the charging instruments to reflect the proper statutory titles and section numbers. I invite any member of the majority to explain how the defendants would be prejudiced. I would particularly like to hear how the defendants were not given fair warning of the charges against them, and how the defendants will prepare their defenses differently now that they know that the name of the charged offense is "aggravated criminal sexual assault" rather than "predatory criminal sexual assault of a child."

The defendants were tried and convicted on the basis of charging instruments that accused them of Class X *536 felonies for being over 17 years of age and committing acts of sexual penetration with victims under 13 years of age. The majority holds that the convictions should be reversed. The effect of this decision is that the defendants will be retried under new charging instruments that will charge the defendants with Class X felonies for being over 17 years of age and committing acts of sexual penetration with victims under 13 years of age. I cannot imagine a greater waste of judicial resources.

Chief Justice FREEMAN joins in this dissent.

Ill.,1999.
People v. Tellez-Valencia
188 Ill.2d 523, 723 N.E.2d 223, 243 Ill.Dec. 191

Briefs and Other Related Documents (Back to top)

• 1999 WL 33749115 (Appellate Brief) Petition for Rehearing (Dec. 09, 1999)
• 1999 WL 33657919 (Appellate Brief) Brief and Argument for Defendant-Appellee (Apr. 02, 1999)
• 1999 WL 33732834 (Appellate Brief) Brief and Argument for Defendant-Appellee (Apr. 02, 1999)
END OF DOCUMENT

**People v. Moore**
335 Ill.App.3d 1214, 836 N.E.2d 946 (Table)
Ill.App. 4 Dist. 2002.
December 12, 2002 (Approx. 1 page)

335 Ill.App.3d 1214, 836 N.E.2d 946 (Table), 297 Ill.Dec. 215

(The decision of the Court is referenced in the North Eastern Reporter in a table captioned "Disposition of Cases by Order in the Appellate Court Under Supreme Court Rule 23." "An unpublished order of the court is not precedential and may not be cited by any party except to support contentions of double jeopardy, res judicata, collateral estoppel or law of the case." IL ST S. Ct. Rule 23(e).

Appellate Court of Illinois,
Fourth District
**People**
v.
**Moore**
NO. **4-00-0890**
December 12, 2002

Trial Court County: Vermilion

Disposition: Aff'd as mod. & rem.

Ill.App. 4 Dist. 2002.
**People v. Moore**
335 Ill.App.3d 1214, 836 N.E.2d 946 (Table), 297 Ill.Dec. 215

END OF DOCUMENT